### A00A0283. WADKINS v. SMALLWOOD et al.
(530 SE2d 498)

JOHNSON, Chief Judge.

Katina Wadkins claimed the owners of a duplex apartment, Michael and Josie Smallwood, were responsible for her injuries and her child's death in a fire because they failed to maintain and inspect the "hard-wired" smoke detector in the apartment and failed to install an additional battery-operated smoke detector. Her claims were tried before a jury, which found for the Smallwoods. Wadkins appeals from the judgment entered upon the jury's verdict. For reasons which follow, we affirm.

The evidence showed that in 1988 the Smallwoods agreed to offer their duplex to low-income families in conjunction with the federal Section VIII housing program. In exchange for leaving the duplex in the federal program for at least ten years, the Smallwoods obtained federal aid to renovate the two apartments in the duplex. The Columbus Housing Authority hired a contractor to renovate the apartments, which included the installation of a hard-wired smoke detector hooked into the apartments' electrical system. The deal included a continuing arrangement whereby the Housing Authority would periodically inspect the apartments, and the Smallwoods agreed to make any repairs the Housing Authority deemed necessary. No evidence suggested the Smallwoods ever failed to make any repairs requested by the Housing Authority.

The jury was informed of the following regulations regarding the hard-wired smoke detector: (1) federal regulation 24 CFR § 882.109 (r) (1) required that after October 1992 Section VIII housing "must include at least one battery-operated or hardwired smoke detector in proper working condition on each level of the unit." In addition, the City of Columbus building code required that apartments be provided with an approved smoke detector installed in accordance with the manufacturer's recommendation and listing.

The evidence showed that the Smallwoods were never told that the hard-wired detector might not be functioning. In fact, a tenant who lived in the apartment prior to Wadkins told them the smoke detector was a nuisance because it would go off when there were too many people smoking in the apartment. Evidence indicated there was power to the hard-wired smoke detector the day before the fire because the doorbell, which operated on the same electrical system, was working properly. While this particular brand of hard-wired smoke detector was actually recalled in 1993 by the manufacturer, the Smallwoods were never informed of this recall.

A 1994 Georgia law called for the installation of battery-operated smoke detectors in apartments. However, the Smallwoods were unaware of the law and were never told that they needed to comply with it. It is undisputed that no battery-operated smoke detector was ever installed in Wadkins' apartment.

Wadkins and her children moved into the apartment in August 1994. On the night of the fire, Wadkins put her children to bed in the living room and retired to a back bedroom down the hallway where the smoke detector was installed. Another adult who also lived in the apartment stayed up and watched television in the living room. He was a cigarette smoker. About 3:00 a.m., Wadkins was awakened by the sound of children giggling. She went to check on them and noticed an orange glow and heard popping sounds in the living room. She woke the adult in the living room, who awoke two other adults in another bedroom.

One of the adults testified that when he entered the hallway, he saw an orange glow but did not smell or notice any smoke. He saw the fire in the living room. Wadkins took two of her three children outside, then returned to her bedroom, put on a pair of pants and left the house. The other adults had entered and exited the house several times, when Wadkins realized her three-year-old child was missing. She was injured as she tried to enter the living room window to look for her son. The child's body was later found in a corner of the living room.

A fire investigator testified that the fire began on the couch, apparently from children playing with a lighter or with matches. He further testified that since one of the adults did not smell or notice

smoke in the hallway, it was possible that even a functioning smoke detector would not have been activated.

1. Wadkins wanted to introduce evidence at trial showing that not only did the Smallwoods fail to *install* a battery-operated smoke detector as required by statute, but they also failed to *maintain* such a smoke detector in good working order as required by another section of the statute. She contends the trial court erred in granting the Smallwoods' motion for partial summary judgment prohibiting the introduction of evidence of the landlord's failure to *maintain* a battery-operated smoke detector. Relying on OCGA § 25-2-40, the trial court's order on the Smallwoods' motion permitted Wadkins to prove that the Smallwoods were required to install a battery-operated smoke detector but specifically prohibited any evidence that the Smallwoods were required to maintain the battery-operated smoke detector in good working order. We agree with the trial court's interpretation of OCGA § 25-2-40.

Two subsections of OCGA § 25-2-40 are applicable in this case. OCGA § 25-2-40 (a) (2) provides that after July 1994,

> every dwelling and every dwelling unit within an apartment . . . shall have installed an approved battery operated smoke detector which shall be maintained in good working order unless any such building is otherwise required to have a smoke detector system pursuant to Section 25-2-13.[1]

However, contrary to Wadkins' contention, evidence of the Smallwoods' failure to maintain the battery-operated smoke detector is not admissible in a civil case. Subsection (g) of the same statute specifically states:

> Failure to maintain a smoke detector in good working order in a dwelling . . . in violation of this Code section shall not be considered evidence of negligence, shall not be considered by the court on any question of liability of any person . . . and shall not diminish any recovery for damages arising out of the ownership, maintenance, or occupancy of such dwelling. . . .

Wadkins cites numerous statutes and cases which prohibit landlords from avoiding duties created by statutes and housing codes.[2] However, none of these statutes and only two of the cases specifically

---

[1] OCGA § 25-2-13 is not applicable to the facts of this case.

[2] See OCGA §§ 44-7-2 (b) (3); 44-7-13; 44-7-14; 51-3-1; see also *Thompson v. Crownover*, 259 Ga. 126 (381 SE2d 283) (1989).

deal with smoke detectors. And all of her citations except the two cases dealing with smoke detectors predate the enactment of OCGA § 25-2-40 (g). Furthermore, Wadkins admits that in one of the cases that do deal with smoke detectors and postdates the enactment of OCGA § 25-2-40, this particular statute was not at issue.[3] And, while the other case specifically held that "[w]hether or not the lack of a smoke detector delayed [the victim's] rescue and contributed to his injuries is a jury question," it further noted, as in this case, that "[t]he fault herein involved is the failure to insure the existence of a smoke detector, not its maintenance."[4]

Wadkins further argues that the OCGA § 25-2-40 (g) exclusion must be held to apply to tenants but not landlords. However, the clear words of the statute belie this argument. While OCGA § 25-2-40 (a) (2) requires the installation and maintenance of a battery-operated smoke detector, OCGA § 25-2-40 (f) calls for a fine of up to $25 for any *occupant* who fails to maintain the smoke detector. The legislature chose in subsection (g) to declare that the failure to maintain the smoke detector shall not be considered evidence of negligence and shall not be considered by the court on any question of liability. They did not limit this exclusion to tenants.

Wadkins claims that OCGA § 25-2-40 (g) is illegal and violates public policy. However, she does not contest the constitutionality of the statute. Instead, she contends that the landlord's general statutory and common law duties override this statute. It is well established that specific statutes govern over more general statutes where they are in conflict.[5] And because subsection (g) was enacted more recently than the older statutes, it controls because the legislature is presumed to know what the existing law was at the time and the effects of this change.[6] The trial court did not err in granting the Smallwoods' motion for partial summary judgment to preclude evidence of their failure to maintain a battery-operated smoke detector in good working order under OCGA § 25-2-40.

2. The trial court did not err in admitting evidence of Wadkins' claims against BRK Electronics, the manufacturer of the hard-wired smoke detector. The trial court is vested with wide discretion in determining the relevancy and materiality of evidence, and admission is favored in doubtful cases.[7] This court will not interfere with

[3] *Denise v. Cannon*, 219 Ga. App. 765 (466 SE2d 885) (1996).
[4] *Housing Auth. &c. of Atlanta v. Jefferson*, 223 Ga. App. 60, 61-62, n. 2, 62 (2) (476 SE2d 831) (1996).
[5] See *Glinton v. And R, Inc.*, 271 Ga. 864 (524 SE2d 481) (1999); *Ga. Mental Health Institute v. Brady*, 263 Ga. 591, 592 (2) (436 SE2d 219) (1993).
[6] See *Glinton*, supra; *Mikell v. State*, 270 Ga. 467, 468 (510 SE2d 523) (1999).
[7] *Cook v. Partain*, 224 Ga. App. 251, 252 (1) (480 SE2d 279) (1997).

the trial court's determination unless the trial court abuses its discretion.[8]

The record shows that Wadkins sued BRK Electronics in a separate suit, alleging the smoke detector was defective and caused her injuries and her son's death. In the present case, the Smallwoods were entitled to have the jury determine the proximate cause of Wadkins' injuries and her son's death. This would include presenting evidence showing that Wadkins blamed the incident on BRK Electronics and its allegedly defective smoke detector.[9]

3. At the conclusion of the evidence, Wadkins moved for a directed verdict on the issue of the Smallwoods' liability, claiming she was entitled to a directed verdict because the Smallwoods did not install a battery-operated smoke detector as required by OCGA § 25-2-40 and did not maintain the hard-wired smoke detector as required by federal regulation. According to Wadkins, since neither she nor her son caused the fire and since the Smallwoods failed to comply with smoke detector statutes and regulations, she was entitled to a directed verdict on the issue of liability. We disagree.

Whether the lack of a smoke detector caused Wadkins' injuries and her son's death is a jury question.[10] Furthermore, there was evidence in the case suggesting that even if the smoke detectors were installed and working, they would not have prevented Wadkins' injuries or her son's death. One of the adults in the apartment stated that he saw the fire but neither saw nor smelled smoke. The fire investigator testified that it was possible that even a functioning smoke detector would not have activated since some fires involve flame and very little smoke.

Evidence was also presented that Wadkins had time to get two of her children out of the house, return to the house to put on a pair of pants, and return outside before she noticed her son was missing. Two other adults also exited and reentered the house a number of times. Wadkins received her injuries when flames erupted as she stood near the front window of the duplex.

Under these circumstances, there was sufficient evidence that the alleged failure of the hard-wired smoke detector and the absence of a battery-operated smoke detector did not contribute to the injuries. Both negligence and proximate cause must be present before liability arises.[11] Regardless of the existence of a functioning smoke detector, the evidence does not prove that the absence of such a

---

[8] Id.

[9] See id.; see generally *Wilkerson v. Alexander*, 208 Ga. App. 83, 86 (2) (429 SE2d 685) (1993).

[10] *Jefferson*, supra at 62.

[11] *Wilkerson*, supra at 86 (2).

warning device was the proximate cause of the tragedy in this case. Clearly, Wadkins and the other adults did not sleep through the fire and had sufficient time to remove other children from the apartment and reenter the apartment several times. The trial court did not err in denying Wadkins' motion for a directed verdict.

4. Based on the reasons stated in Division 3, the trial court committed no error in denying Wadkins' motion for judgment notwithstanding the verdict or motion for new trial premised on the same arguments as her motion for a directed verdict.

5. Wadkins claims the trial court erred in not giving several of her requested charges. At the outset we note that Wadkins combines two enumerations of error, which include the trial court's failure to give fourteen requests to charge, into a three-page argument which contains little citation of authority. Despite the generalized argument and lack of authority, we have reviewed each of Wadkins' claimed errors and have determined that no reversible error exists because in each instance the requested charge involved a principle substantially covered in the court's general charge, was not adjusted to the evidence, or was argumentative.[12]

It is well established that jury instructions must be read and considered as a whole in determining whether the charge contained error.[13] Moreover, a trial court does not err in refusing to give a requested charge that is not legally accurate and adjusted to the evidence.[14]

> A request to charge must embody a correct, applicable and complete statement of law, legal and perfect in form and adjusted to the pleadings and evidence; it must not be argumentative or seek an expression of opinion on the part of the court; and it must not be so phrased so as to have the tendency to confuse and mislead the jury or to becloud the issues in the case.[15]

(a) Wadkins first contends the trial court erred in not reading her request to charge no. 2 to the jury. This request is a ten-page charge entitled "Plaintiff's Contentions." A reading of the requested charge shows that the contentions are argumentative and include phrases such as "frantic screams of her son," and "horrendous personal injuries and excruciating pain and suffering." The charge also

---

[12] See *Spicewood, Inc. v. Dykes Paving &c. Co.*, 185 Ga. App. 397, 399 (4) (364 SE2d 298) (1987).

[13] *Lucas v. Love*, 238 Ga. App. 463, 464 (3) (519 SE2d 253) (1999).

[14] Id.

[15] (Citations and punctuation omitted.) *Gen. Ins. Svcs. v. Marcola*, 231 Ga. App. 144, 147 (4) (497 SE2d 275) (1998).

includes detailed assertions which constitute impermissible comments on the evidence and arguably invade the province of the jury in directing findings of fact.[16]

The trial court did not err in refusing to give this charge because it is inadequate, is merely a statement of Wadkins' contentions, and is an incomplete and inaccurate statement of the law.[17] A trial court does not err in failing to give a requested charge if any portion of the requested charge is inapt, incorrect, misleading, confusing, argumentative, not precisely adjusted or tailored, or not reasonably raised or authorized by the evidence.[18]

Moreover, even if the requested charge is considered appropriate, failure to give it in the exact language requested is not reversible error because the trial court accurately and fully charged the relevant law.[19] Here, the trial court charged the jury regarding Wadkins' claims, the burden of proof, the allegations of negligence, the alleged violations of statutes and regulations, the landlord's duties, and damages. The trial court also explained the verdict form to the jury. The trial court's language was less confusing and less argumentative than the requested charge. A requested charge is properly refused when the principles involved are substantially covered in the court's general charge.[20] Accordingly, the trial court did not err by refusing to give the ten-page requested charge.

(b) The trial court did not err in failing to give Wadkins' request to charge no. 3 since the trial court's charge fully covered the principles contained in her request. Wadkins' request to charge no. 3 contains a verbatim recitation of OCGA § 51-1-8, which deals with the creation of private duties from statute or contractual relations. The trial court fully charged the jury regarding the statutory and common law duties on which Wadkins based her claims. This charge was substantially covered in the trial court's general charge to the jury. Thus, it was not error for the trial court to refuse to charge the exact language requested.[21]

(c) Wadkins' request to charge no. 11 is a quote from the Georgia Law of Torts[22] regarding holding the Smallwoods to a higher standard of care with regard to children. This charge was inappropriate

---

[16] See *Valdez v. Power Indus. Consultants*, 215 Ga. App. 444, 447-448 (3) (451 SE2d 87) (1994).

[17] See *Petkas v. Grizzard*, 253 Ga. 407, 408 (321 SE2d 323) (1984).

[18] *Roberts v. Chapman*, 228 Ga. App. 365, 367 (2) (492 SE2d 244) (1997).

[19] *Petkas*, supra.

[20] *Shaw v. McDonald's Restaurants of Ga.*, 191 Ga. App. 583, 585 (2) (382 SE2d 632) (1989).

[21] See *Roswell Properties v. Salle*, 208 Ga. App. 202, 207 (8) (430 SE2d 404) (1993); *Ins. Co. of North America v. Smith*, 189 Ga. App. 353, 357 (4) (375 SE2d 866) (1988).

[22] Adams & Adams, Ga. Law of Torts (1998 ed.), § 3-8 (b), pp. 98-100.

and confusing given the issues of the case: whether the absence of a battery-operated smoke detector or the alleged absence of a working hard-wired smoke detector caused Wadkins' injuries and the death of her son. Furthermore, if the object of Wadkins' requested charge was to show that the child could not appreciate the danger, the trial court covered this charge by charging the jury that the child was "conclusively presumed incapable of negligence" and that no negligence of his mother could be imputed to him. The trial court did not err in refusing to give Wadkins' requested charge.

(d) Wadkins claims the trial court erred in refusing to charge the jury regarding the distraction theory. However, the distraction theory did not apply in this case. No evidence suggests that the Smallwoods distracted Wadkins either before or during the fire. This requested charge was not tailored to the evidence.

(e) Wadkins' request to charge no. 13 informs the jury that the negligence of a parent, which is not attributable to the child, cannot be used as a defense to any negligence of the defendants. The principle underlying this request was fully covered by the trial court in its general charge.

(f) Wadkins' request to charge no. 15 informs the jury of the purpose of a smoke detector and states that whether the lack of a functioning smoke detector delayed the child's rescue and contributed to his injuries is a jury question. The trial court gave this portion of the requested charge. The trial court did not err in refusing to give the remainder of the requested charge, which merely repeated the first portion of the charge in a suggestive and argumentative fashion. A trial court never errs in refusing to give an argumentative instruction.[23]

(g) Wadkins' request to charge no. 16 discussed the Smallwoods' general duties as landlords. The trial court amply covered these principles when it charged the jury as to the landlord's duties and the purpose of the smoke detector.

(h) Wadkins' request to charge nos. 17 and 18, regarding the state's public policies to prevent unsafe low-income housing and in favor of landlord liability, were properly refused. The requests to charge were cumulative of the trial court's charge. Moreover, "[j]ury instructions should set forth objective legal principles to be applied by the jury in making its determination, and should not include language used by an appellate court to explain the rationale of a legal principle."[24]

(i) In her request to charge no. 23, Wadkins requested that the

---

[23] See *Morris v. State Farm &c. Ins. Co.*, 203 Ga. App. 839, 840 (3) (418 SE2d 119) (1992).

[24] (Citation omitted.) *Bishop v. State*, 271 Ga. 291, 293-294 (5) (519 SE2d 206) (1999).

trial court charge the jury with OCGA § 25-2-40 (a) (2), which deals with the landlord's duty to install and maintain a battery-operated smoke detector. For the reasons stated in Division 1, the trial court properly refused to permit evidence regarding the Smallwoods' failure to maintain a battery-operated smoke detector. Moreover, the trial court did charge the jury regarding the Smallwoods' duty to install a battery-operated smoke detector. The trial court properly refused to give the requested charge.

(j) Wadkins' request to charge nos. 29, 31, and 35 all contain principles of law applicable to standard premises liability cases, such as slip-and-fall cases. She makes no argument showing why these requests were warranted. Moreover, to the extent these principles might apply, the principles are more specifically covered by landlord and tenant law, and the trial court fully covered those principles in its charge regarding the duties of the landlord and tenant.

(k) Wadkins' request to charge no. 42 is a detailed charge on the computation of damages for the wrongful death of her son. Since the jury returned a verdict in favor of the Smallwoods, any alleged error in the charge on damages is harmless.[25]

*Judgment affirmed. McMurray, P. J., and Phipps, J., concur.*

ON MOTION FOR RECONSIDERATION.

Wadkins has raised several contentions on motion for reconsideration, one of which we find necessary to address. She argues that we overlooked the material fact that she brought an action on behalf of her deceased son for his personal injuries and that facts relating to the negligence of her or others are not imputable to the child. Wadkins' allegation is a correct statement of the law which we did not overlook. The trial court properly denied Wadkins' motion for a directed verdict of liability in her son's personal injury case based on evidence in the case suggesting that even if the smoke detectors had been installed and working, they would not have prevented Wadkins' son's injuries.

As we stated in Division 3 of the opinion, regardless of the existence of a functioning smoke detector, the evidence does not prove that the absence of such a warning device was the proximate cause of the tragedy in this case, including Wadkins' son's injuries and ultimate death. One of the adults in the apartment stated that he saw the fire but neither saw nor smelled smoke. The fire investigator testified that it was possible that even a functioning smoke detector would not have activated since some fires involve flame and very lit-

---

[25] See *Henry v. Watkins*, 219 Ga. App. 80, 81 (2) (464 SE2d 215) (1995); *Intl. Images v. Smith*, 171 Ga. App. 172, 175 (2) (318 SE2d 711) (1984).

tle smoke. Evidence that the alleged failure of the hard-wired smoke detector and the absence of the battery-operated smoke detector did not contribute to her son's injuries was sufficient to send the case to a jury on the issue of the Smallwoods' liability.

DECIDED MARCH 3, 2000 —
RECONSIDERATION DENIED MARCH 27, 2000 — 

*James D. Patrick, Jr.*, for appellant.
*Self, Mullins, Robinson, Marchetti & Kamensky, Ronald W. Self*, for appellees.