**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 7, 2023**

# In the Court of Appeals of Georgia

A23A0374. KUDZU CAPITAL, LLC v. CITY OF DECATUR.

MILLER, Presiding Judge.

In this condemnation action between the City of Decatur ("the City") and Kudzu Capital, LLC ("Kudzu"), Kudzu appeals from the jury's verdict and the trial court's final judgment which awarded Kudzu $1,400,000. On appeal, Kudzu argues that (1) the trial court abused its discretion by denying its motion in limine and by granting two of the City's motions in limine; and (2) the trial court erred by denying several of its requests to charge the jury and by granting the City's request to charge. Finding no error, we affirm the jury's verdict and the trial court's final judgment.

A review of the record shows that the condemned property in this case consists of 4.19 acres of undeveloped real property spread across 16 lots in Decatur, Georgia.

The property abuts the West Dearborn Circle right-of-way[1] and was created pursuant to a subdivision plat for Dearborn Park that was recorded in 1939. West Dearborn Circle, which was formerly an "unopened right-of-way dirt trail," was dedicated to the City pursuant to the 1939 plat, and the City later constructed it as a pedestrian and bicycle pathway in 2012.

In January 2015, Mattie Robinson, the owner of the property at that time, contracted to sell the property to Redwater, LLC ("Redwater"). Redwater subsequently assigned its rights under the contract to Kudzu in June 2016 for $645,000, and Kudzu ultimately purchased the property from Robinson for $336,788.22. After purchasing the property, Kudzu and its representatives sought permission from the City to build on the property and to develop the right-of-way to allow for vehicular access, but the requests were denied because the property essentially consisted of "un-buildable lots."

In January 2018, in connection with its "Decatur Greenway" plan, the City filed a petition against Kudzu to condemn the property, and it requested the appointment

---

[1] Two of the lots also had access from two other roadways, Candler Drive and Chevelle Lane.

of a special master pursuant to OCGA § 22-2-102.[2] The trial court subsequently entered an order appointing a special master, and the matter was set for a hearing before the special master. Following a hearing, the special master awarded Kudzu $2,180,000. Both Kudzu and the City appealed the special master's award and requested a jury trial.

At trial, Kudzu presented testimony from an appraiser who determined the property's value using "two scenarios." He explained that under the first scenario, he valued the property with the right-of-way paved or available for pavement at $3,250,000. Under the second scenario, he valued the property "leaving the right-of-way alone" and determined that the property's value was $3,150,000. A second appraiser for Kudzu testified that the valuation of the property with the developed right-of-way was $3,500,000, and the value of the property without the developed right-of-way was $3,230,000. Kudzu also presented testimony from its owner that Kudzu's own internal appraisal valued the property at $4,300,000, which included the value of the right-of-way. The City, on the other hand, presented testimony from its appraiser that the value of the property was $685,000 under a sales comparison

_____

[2] Paces Funding, LLC, which held a security deed for the property, was also named as a party to the condemnation action, but it is not a party to this appeal.

3

approach and that the value of the property under a subdivision analysis approach was $649,000.

Following the trial, the jury awarded Kudzu $1,400,000, and the trial court subsequently incorporated the jury's verdict into a final judgment. Kudzu now appeals.

1. First, in three related enumerations of error, Kudzu argues that the trial court abused its discretion by denying its motion in limine and by granting two of the City's motions in limine.[3] We disagree and conclude that the trial court did not abuse its discretion in granting and denying the motions in limine.

> We review the trial court's decisions on the admissibility of evidence, including a denial of a motion in limine, for an abuse of discretion. And motions in limine should only be granted with great care and when there is no circumstance under which the evidence at issue could be admissible at trial[.] By its very nature, the grant of a motion in limine excluding evidence suggests that there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial. In light of that absolute, the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care.

---

[3] We address Kudzu's enumerations of error in a different order than that presented in its appellate brief.

4

(Citation omitted.) *One Bluff Drive, LLC v. K.A.P., Inc.*, 330 Ga. App. 45, 51-52 (3) (766 SE2d 508) (2014).

(a) First, Kudzu argues that the trial court abused its discretion by denying its motion to exclude testimony pertaining to the 2016 purchase price of the property and the related tax certificate. We conclude that the trial court did not abuse its discretion in this regard.

It is true that

> [t]he sole issue to be determined in a condemnation matter is the just and adequate compensation due for property taken. Generally, just and adequate compensation is the fair market value of the condemned property *at the time of taking*. Fair market value is defined as the price that a seller who desires but is not required to sell and a buyer who desires but is not required to buy would agree is a fair price after due consideration of all the elements reasonably affecting value.

(Citations and punctuation omitted; emphasis supplied.) *Evans v. Dept. of Transp.*, 331 Ga. App. 313, 315 (1) (771 SE2d 20) (2015). Still, "[a]ny evidence is relevant which logically tends to prove or disprove a material fact which is at issue in a case, and every act or circumstance serving to elucidate or throw light upon that material issue is relevant and admissible." (Citation omitted.) *Clary v. City of Stockbridge*, 300 Ga. App. 623, 625 (1) (686 SE2d 288) (2009). "The trial court has wide discretion to

5

admit testimony of questionable releavnce. In fact, it has long been the policy of the Georgia appellate courts to be liberal in allowing matters to be considered by the jury which might affect their collective minds in determining the just and adequate compensation to be paid the condemnee." (Citation and punctuation omitted.) *Troup County v. Mako Dev., LLC*, 352 Ga. App. 366, 372-373 (3) (835 SE2d 44) (2019).

We conclude that the price Kudzu paid for the property and the corresponding tax certificate were relevant in determining the adequate compensation for the taking. The evidence showed that in June 2016, Kudzu paid Robinson $336,788.22 for the property. The City also presented the corresponding tax certificate from Kudzu's 2016 purchase to show that Kudzu paid a total sum of $985,000 for the property, which included the additional money Kudzu paid to Redwater for its involvement in the transaction with Robinson. Kudzu, on the other hand, presented evidence that the fair market value of the property at the time of the taking was $4,300,000. Because the sole issue at trial was the fair market value of the property, which was greatly contested at trial, we conclude that the trial court did not abuse its discretion by admitting this evidence at trial. See *Robert Stovall Family, L.P. v. Carroll County Water Auth.*, 255 Ga. App. 223, 224 (564 SE2d 763) (2002) (trial court did not abuse its discretion in admitting into evidence the purchase price that the condemnee paid

6

for the property 12 years before the county's taking because the evidence was relevant in determining the amount of compensation for the taking); *Housing Auth. of City of Calhoun v. Spink*, 91 Ga. App. 72, 77 (85 SE2d 80) (1954) (holding that the purchase price the condemnee paid for property nearby the condemned property was relevant in the condemnation proceeding).[4] Therefore, this enumeration of error fails.

(b) Next, Kudzu argues that the trial court abused its discretion by granting the City's motion to exclude evidence of Kudzu's alleged right to require the City to open the West Dearborn Circle right-of-way for vehicular use because the evidence was relevant in determining just and adequate compensation for the property. We conclude that the trial court properly excluded this evidence.

Generally,

> [w]here the owners of a tract of land subdivide it into lots, record a map or plat showing such lots, with designated streets and a public park, and sell lots with reference to such map or plat, the owners are presumed to

---

[4] Kudzu's reliance on our prior decisions in *Clayton County Bd. of Tax Assessors v. Lake Spivey Golf Club, Inc.*, 207 Ga. App. 693, 694 (1) (428 SE2d 687) (1993), disapproved on other grounds by *General Motors, LLC v. Buchanan*, 313 Ga. 811, 826 (2) (d) n.6 (874 SE2d 52) (2022), *Brookhaven Assoc. v. DeKalb County*, 187 Ga. App. 749, 749-750 (1) (371 SE2d 231) (1988), and *Dept. of Transp. v. Petkas*, 189 Ga. App. 633, 638-639 (5) (377 SE2d 166) (1988), is misplaced because none of those decisions involved evidence regarding the purchase price of the subject property.

7

> have irrevocably dedicated such streets and park for the use of all of the
> lot owners in the subdivision. The owners of lots in the subdivision have
> an easement in these public areas whether or not there has ever been an
> acceptance of the dedication by public authorities or the public
> generally.

(Citation and punctuation omitted.) *Northpark Assoc. No. 2, Ltd., v. Homart Dev. Co.*,

262 Ga. 138, 139 (1) (414 SE2d 214) (1992). But a property owner's mere easement

to a roadway does not necessarily confer a right to require a county or municipality

to open or maintain that roadway. Indeed, in *Chatham County v. Allen*, 261 Ga. 177

(402 SE2d 718) (1991), the issue before the Supreme Court of Georgia was whether

mandamus would lie to require a county to develop an unopened and dedicated road

in a subdivision. There, a property owner purchased a number of lots in a subdivision,

and some of the streets in the subdivision which had been dedicated to the county

remained unopened and undeveloped. Id. In reversing the superior court's grant of

mandamus to the property owner, the Court reasoned that unopened, undeveloped,

proposed roads in a subdivision are not public roads[5] by virtue of dedication and

---

[5] Notably, Kudzu did not argue below that the right-of-way satisfied the definition of a public road within the meaning of the statute, but instead expressly agreed with the trial court that the right-of-way was not open within the meaning of the statute.

8

acceptance, and thus the county was not obligated to open or maintain those roads. Id. The Court revisited this issue in *Burke County v. Askin*, 291 Ga. 697 (732 SE2d 416) (2012) ("Burke County I"), and stated that "the fact that a county has accepted an express dedication of roads in a subdivision does not mean that the county is without discretion to leave certain of the roads therein unopened." Id. at 700 (2). Moreover, in *MARTA v. Datry*, 235 Ga. 568 (220 SE2d 905) (1975), the Court further stated that a street dedicated for public use may "be put to all customary uses within the definition of the use." (Citation omitted.) Id. at 574-575 (1) (concluding that the city did not wrongly limit a street for pedestrian and emergency vehicles use only).

Therefore, pretermitting the determination of the scope of any legal interest Kudzu alleges it had in accessing the West Dearborn Circle right-of-way for ingress and egress, under *Chatham County, Burke County I,* and *Datry*, Kudzu could not compel the City to open the right-of-way for any particular vehicular use. In other words, Kudzu's right to access the right-of-way for ingress and egress did not confer a right to require the City to open the right-of-way for any particular use. Consequently, the trial court did not abuse its discretion by granting the City's motion in limine.

(c) Lastly, Kudzu argues that the trial court abused its discretion by granting the City's motion to exclude evidence of its representative's dealings with the City prior to the condemnation and the City's abeyance of its variance application. This claim is not meritorious because Kudzu was allowed to present evidence on this issue.

In its motion in limine, the City sought to exclude testimony from Kudzu's representative, Linda Dunlavy, regarding the City's refusal to grant Kudzu's variance application and the City's alleged "unfair treatment" of Kudzu during the condemnation discussions. Although the trial court granted the City's motion, the court nevertheless allowed Kudzu to present evidence that Kudzu submitted an application for a variance and that its application was "a common variance and it would commonly have been granted[.]" The trial court also allowed Kudzu to present testimony from Dunlavy that she completed the application and submitted it around the time of the condemnation. Moreover, in lieu of Dunlavy's trial testimony, the City stipulated to the admission of a November 2017 letter from Dunlavy to the Mayor and the city commissioners. In the letter, Dunlavy stated that Kudzu had been attempting to gain vehicular access to the West Dearborn Circle right-of-way for "several months" and that Kudzu had filed a variance request for approval of a private road. Dunlavy also stated that "[t]he variance was tabled" by the zoning board and that

10

Kudzu was instructed to exhaust "all other possibilities" to gain vehicular access on the right-of-way. Dunlavy further stated that Kudzu would develop the right-of-way at its own cost to "resolve the ongoing dispute" of its claim to the right-of-way. Because Kudzu was, in fact, permitted to present evidence pertaining to its variance application and the fact that the application had been "tabled," Kudzu is not entitled to any relief on this claim, and this enumeration of error necessarily fails.

2. Next, in two related enumerations of error, Kudzu argues that the trial court erred in charging the jury. Specifically, Kudzu argues that the trial court erred by failing to give four of its requested charges and by giving a charge requested by the City and by repeating the charge in a manner that amounted to an incorrect statement of law. These claims are also not meritorious.

"When we review an allegedly erroneous jury charge, we apply a plain legal error standard of review." (Citation omitted.) *Fassnacht v. Moler*, 358 Ga. App. 463, 467 (1) (855 SE2d 692) (2021). Regarding a trial court's refusal to give a requested charge, it is well settled that

> [a] request to charge must embody a correct, applicable and complete statement of law, legal and perfect in form and adjusted to the pleadings and evidence; it must not be argumentative or seek an expression of opinion on the part of the court; and it must not be so phrased so as to

11

have the tendency to confuse and mislead the jury or to becloud the issues in the case.

(Citation omitted.) *Wadkins v. Smallwood*, 243 Ga. App. 134, 139 (5) (530 SE2d 498) (2000). Thus, "[a] trial court does not err in failing to give a requested charge if any portion of the requested charge is ianpt, incorrect, misleading, confusing, argumentative, not precisely adjusted or tailored, or not reasonably raised or authorized by the evidence." (Citations omitted.) Id. at 140 (5) (a). Moreover, we have been clear that "a jury charge need not be given in the exact language requested if the charge as given clearly covers the circumstances of the case. All that is necessary, . . . is that these principles be fairly given to the jury in the general charge." (Citation omitted.) *Baxter v. Wakefield*, 259 Ga. App. 475, 478 (2) (577 SE2d 804) (2003).

(a) First, Kudzu argues that the trial court erred by failing to instruct the jury in accordance with four of its requested charges, which were as follows:

Request to Charge 16: The right of access, or easement of access, to a public road is a property right which arises from ownership of land contiguous to a public road, and the landowner cannot be deprived of this right without just and adequate compensation being first paid.

Request to Charge 17: Where a private property owner dedicates property for a specific purpose, the local government has no power to divert the property from such intended use except through the exercise of its power of eminent domain.

Request to Charge 18: Where a [c]ity accepts land dedicated for street purposes, such dedication inures to the benefit of the public, and parties who purchase abutting property bought with reference to plats showing such street, the City cannot prevent such abutting property owners from using the dedicated street right of way. The [c]ity is not permitted to abandon such dedicated right of way, nor otherwise prevent adjoining landowners to utilize such right of way.

Request to Charge 26: When the owner of a tract of land divides it into lots and streets and causes a map or plat of the same to be made and duly recorded whereby the lots and streets are [delineated], and sells the lots with reference thereto, the purchasers acquire private property rights in the streets of the subdivision. Such purchasers acquire title to their lots along with rights to the rights of way in and over such streets for purpose of accessing their lots.

Based on these charges, Kudzu collectively argues that "the dedication of a right of way by plat not only creates a property right in the local government to whom it is dedicated, but also creates an irrevocable right of access" in the abutting property that the City cannot take away without first paying just and adequate compensation.

We conclude that Kudzu's requests to charge were adequately covered by the other general instructions given by the trial court. Specifically, the trial court instructed the jury that it had to determine the just and adequate compensation for the property, which is the "actual value of loss." The court then defined actual value as the fair market value of the property, which is "the price a seller who desires but [is] not required to sell and a buyer who desires but [is] not required to buy would agree is a fair price after due consideration of all the evidence reasonably affecting value." Thus, based on these instructions, the jury was to determine the price that a seller and a buyer would agree is fair after consideration of the evidence. There was nothing in the court's instructions that in any way prohibited or curtailed the jury from considering the right-of-way in determining the fair market value. Furthermore, given these instructions, Kudzu was able to argue its position regarding the fair market value of the property, including the right-of-way. Indeed, the record shows that in its closing argument, Kudzu vehemently argued the testimony from its appraisers regarding the value of the property, which included the right-of-way. Because Kudzu's requested charges were adequately covered by the other general instructions given by the trial court, the trial court did not err by denying Kudzu's requests to charge. See *Baxter*, supra, 259 Ga. App. at 478 (2) (trial court did not err by denying

14

the plaintiff's request to charge where the requested charge was adequately covered in the court's general charge).

(b) Next, Kudzu argues that the trial court erred by applying the Supreme Court of Georgia's decision in *Chatham*, supra, and charging the jury that "a county or municipality is under no obligation to open an undeveloped road." Kudzu claims that because the charge was not tailored to the facts of this case, and the trial court compounded the error by repeating the charge to the jury. We conclude that Kudzu has failed to show that the trial court erred in this regard.

First, for the reasons stated above in Division 1 (b), supra, the trial court did not misstate the law by charging the jury that a county or municipality had no obligation to "open" an undeveloped road.[6] Second, we reject Kudzu's claim that the trial court effectively misstated *Chatham* by re-charging the jury that a county or municipality had no obligation to open an undeveloped road. In its initial charge to the jury, the trial court instructed the jury as follows: "Members of the jury, a county

---

[6] To the extent that Kudzu now argues that the West Dearborn Circle right-of-way constitutes a "public road" within the meaning of OCGA § 32-1-3 (24) and therefore *Chatham* does not apply, as previously stated, Kudzu expressly acknowledged below that the right-of-way was not an open road within the meaning of the statute. See *OVIP, Inc. v. Blockbuster Textiles, LLC*, 289 Ga. App. 276, 278 (1) (656 SE2d 907) (2008) ("[B]oth of our appellate courts have consistently refused to consider arguments advancing new legal theories for the first time on appeal.").

15

or municipality is under no obligation to open an undeveloped road." Kudzu objected to the charge, and in a convoluted argument, it appeared to request that the jury be instructed that the City had discretion on whether to open an undeveloped road. The trial court then re-charged the jury that a county or municipality is under no obligation to open an undeveloped road. Kudzu objected again and told the trial court that, given its initial objection, it desired that the jury be instructed that it was within the City's discretion whether to open an undeveloped road. The trial court declined to re-charge the jury. Because the jury charge is a direct quote from *Chatham*,[7] and the trial court did not make any other comments or remarks to emphasize this charge, it cannot be said that the trial court's re-charge on this principle constituted a misstatement of the law. See *Howland v. Wadsworth*, 324 Ga. App. 175, 183 (4) (749 SE2d 762) (2013) ("[M]ere repetition of a principle of law will not authorize a reversal unless it appears from the charge as a whole that there was such undue emphasis as to result in an unfair statement of the law.") (citation and punctuation omitted). Therefore, Kudzu's claims that the trial court erred in charging the jury necessarily fail.

---

[7] In *Chatham*, the Court stated that the undeveloped streets did not constitute public roads, and thus "the county [was] *under no obligation* to open or maintain them." (Emphasis supplied.) *Chatham*, supra, 261 Ga. at 177.

Accordingly, for the reasons stated above, we affirm the jury's verdict and the trial court's final judgment.

*Judgment affirmed. Mercier and Hodges, JJ., concur.*