## A09A1754. SELLERS v. BURROWES et al.
### (691 SE2d 607)

BARNES, Judge.

Martha Sellers died in February 2002 from complications following gastric bypass surgery performed by Dr. Celio Burrowes. Her husband, Howard Sellers, sued Burrowes, alleging the doctor committed malpractice by failing to give Mrs. Sellers blood thinners after the surgery, which allowed a blood clot to form and lodge in her lung, leading to a series of events that ended with Mrs. Sellers' death. The jury returned a defense verdict,[1] and Sellers appeals, contending that the trial court erred by (1) expressing an opinion as to whether certain facts had been proven; (2) making certain evidentiary rulings; and (3) denying Sellers' request to give a jury charge on concurrent negligence. For the reasons that follow, we affirm the verdict.

The evidence at trial revealed that Mrs. Sellers was clinically obese and suffered from numerous health issues as a result. In May

---

[1] This is the second trial in this case. The first verdict was reversed and the case was remanded for a new trial because the trial court failed to excuse a biased juror for cause. *Sellers v. Burrowes*, 283 Ga. App. 505 (642 SE2d 145) (2007).

2001 Mrs. Sellers consulted Dr. Burrowes, who specialized in gastric bypass surgery, and on January 18, 2002, he performed the procedure on her. After surgery, Mrs. Sellers was fitted with intermittent compression devices on her calves to push her blood along and reduce her risk of developing blood clots. The compression devices were removed the next day when she was able to get out of bed to use the restroom. Contrary to expectation, Mrs. Sellers was not discharged within a day or two because she was nauseated and short of breath. She remained hospitalized for a week while Burrowes and consulting doctors ran tests and tried different medications to diagnose and relieve these problems.

On January 24, 2002, Mrs. Sellers' heart stopped as she tried to sit up in bed, apparently due to a blood clot that had broken off and lodged in her lung. She was resuscitated and placed on a respirator in intensive care, where she had one-on-one nursing and was being treated by an "intensivist" physician, Dr. Anthony Kimani, who managed her medications, as well as by Dr. Burrowes, who remained the attending physician. Intensivists care for the sickest patients in the hospital, and could be compared to primary care doctors for patients in ICU. Kimani stabilized Mrs. Sellers' blood pressure, heart rate, and breathing, sedating her so that her brain's breathing center would not fight the respirator. She was completely comatose after the cardiac arrest, but within a few days she showed signs of improvement and was responding to stimuli around her. Dr. Kimani testified that he never observed signs that would have led him to think Mrs. Sellers needed restraints, the use of which had been recently discouraged by the Joint Commission on Hospital Accreditation.

On January 26, 2002, Mrs. Sellers extubated herself while in ICU. Dr. Kimani testified that the health care providers thought the endotracheal tube came out when Mrs. Sellers put pressure on the tubing somewhere, perhaps by moving her arm on top of the tubing, causing tension and pulling the tube out. She did not pull it out by flailing around, he said. After the tube came out, the health care providers administered oxygen and watched to see if Mrs. Sellers could breathe sufficiently on her own, but because she continued to have a hard time breathing, an anesthesiologist replaced the endotracheal tube and she was put back on the respirator. Shortly after that her heart rate slowed and she suffered another cardiac arrest. Although she was again resuscitated, the blood flow to her brain was halted long enough to cause brain damage from oxygen deprivation. She never regained consciousness. Her family transferred her to another hospital and she died after being removed from life support on February 19, 2002.

Sellers sued Burrowes, contending that his failure to place Mrs. Sellers on blood thinners before the surgery violated the applicable

standard of care and caused the initial blood clot which precipitated her first heart attack that led to her being placed in ICU on a respirator.[2] The blood clot initiated a series of events that finally led to her death, he asserted. Sellers further contended that Burrowes should have ordered that Mrs. Sellers be placed in mechanical restraints while intubated in ICU, which would have prevented her from pulling out her tube and suffering the consequences that led to her ultimate demise. Following a week-long trial, the jury returned a defense verdict and Sellers appeals.

1. Sellers contends that the trial court improperly commented on the evidence in violation of OCGA § 9-10-7, and thus erred in denying his motion for a mistrial. Burrowes' expert in hematology testified about a Consensus Statement published every two or three years setting forth authoritative guidelines for blood clot prophylaxis. Sellers asked Burrowes on cross-examination if he knew about the Consensus Statement, and Burrowes replied that in 2002 he did not, although he did now. When asked if the statement was published in 2000, Burrowes replied, "I don't remember; 2000, 2001, around that time period." Sellers then asked whether Burrowes agreed that the statement said blood thinners should be administered to moderate- and high-risk patients, and Burrowes responded, "Can I see it?" Sellers replied he thought Burrowes had read it, and when Burrowes said he wanted to refresh his memory, Sellers asked what he recalled about the statement. Burrowes' counsel objected to the question, protesting that Burrowes was entitled to look at the Consensus Statement, and Sellers responded that he was entitled to test Burrowes' memory.

The trial court replied, "I'm not so certain you are [entitled to test his memory] in an article we're not even sure was, A, out there — there's some dispute — before his surgery; B, he had read before the surgery, and this is not a memory test on journals." Sellers objected to the court's comments on the evidence because the article was written in 2000, two years before the January 2002 surgery. The court responded, "There was just testimony, the jury will recall it, a dispute. I heard what you said about when it was out there and when it was settled. There was a dispute regardless. This is not a memory test. . . ." Sellers moved for a mistrial on the ground that the trial court's statement constituted an impermissible comment on the evidence, and the trial court denied the motion.

Sellers argues that the trial court's remarks were improper and factually incorrect, because the evidence was undisputed that the

---

[2] Sellers initially sued the hospital and attending ICU nurse as well, who apparently settled before trial.

literature was published in 2000, before this surgery occurred. The point he was trying to make, he said, was that Burrowes was unaware in 2002 that experts had agreed on the risk factors and methods for preventing blood clot formation, and the trial court's comments could have led the jury to infer that Sellers was trying to use "after-the-fact medical science" against Dr. Burrowes.

"Pertinent remarks made by a trial court in discussing the admissibility of evidence or explaining its rulings do not constitute prohibited expressions of opinion. [Cit.]" *Morrison v. Morrison*, 282 Ga. 866, 867 (1) (655 SE2d 571) (2008).

> In passing upon the admissibility of testimony, or sufficiency of proof to make out a cause of action, the judge must to some extent decide as to the weight of evidence; and for him to give as a reason for his rulings the weight that should be attached to the testimony in question is not necessarily reversible error.

*Florida, Central &c. R. Co. v. Lucas*, 110 Ga. 121, 125 (35 SE 283) (1900). Further, "observations and remarks . . . called forth by the nature of the questions of law . . . before the court at the time for decision" involving "pertinent replies to the position of counsel, or valid reasons for the rulings of the court upon the questions presented" are permissible. Id. What is not permissible is for the trial court to go "outside of the line of legitimate discussion upon the point presented," and give apparent judicial endorsement and approval to the testimony of a witness. Id.

The trial court here did not imply endorsement or approval of any witness's testimony; it explained why it was sustaining Burrowes' objection to being asked about the publication without being allowed to look at it. Further, Burrowes agreed that the article was published in 2000 or 2001, which was the only evidence regarding the publication date, and admitted he did not know about it before Mrs. Sellers' January 2002 surgery. Finally, the trial court cured any misstatement it made by charging the jury that it

> wanted to emphasize to you anything that I did or said during the course of this trial was not intended to and should not imply, hint or suggest to you which of the parties should [prevail] in the case. Particularly at times when I was called upon by law to rule on objections and to deal with matters of the courtroom decorum. Don't take anything I said or didn't say as a hint or a suggestion or an implication of what your verdict should be. Whichever of the parties is entitled to a verdict is entirely a matter for you to determine

YALE LAW LIBRARY

for yourself. This court's interest in the matter is only that the case be fairly presented to you according to the law and the procedures of the state of Georgia. . . .

Accordingly, we find no error in the trial court's denial of Sellers' motion for a mistrial on these grounds.

2. Sellers contends the trial court erred in allowing Burrowes to introduce evidence that Mrs. Sellers consented to the procedure knowing the risk of blood clots or death, but not allowing Sellers to introduce evidence that she would not have consented if she had known Burrowes' mortality rate was higher than the national average. The trial court addressed this issue before the first trial of the case and revisited it thoroughly before this trial. During a pretrial hearing on Burrowes' motion in limine to exclude evidence of the doctor's mortality rate and other patients' records, Sellers raised additional arguments he had not raised before, and the trial court noted that the issue was now being framed as "informed consent impeachment," the resolution of which could "infect the entire case." Because the trial court required further briefing and consideration of these additional arguments in the context presented, the court continued the specially-set trial for three months and directed the parties to brief the new issues raised.

After extensive briefing from the parties, and after deciding to trifurcate the trial, the court granted the defendant's motion in limine and held that no evidence of the mortality rates of Burrowes' patients was admissible during the liability phase of the trial unless Dr. Burrowes opened the door to being impeached. The court found that Sellers' proposed "evidence of mortality rates and specific patient outcomes . . . was highly prejudicial and its probative value is far outweighed by the prejudice."

"[T]he decision to admit or exclude evidence is committed to the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion." *DOWA Enterprises v. Stanford Ellington Post &c.*, 286 Ga. 278, 279 (687 SE2d 469) (2009). When "an issue is raised whether the probative value of evidence is outweighed by its tendency to unduly arouse the jury's emotions of prejudice, hostility, or sympathy, a trial court's decision regarding admissibility is a matter of discretion." *Hinton v. State*, 280 Ga. 811, 816 (4) (631 SE2d 365) (2006). Further, "a trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, [or] misleading of the jury. . . ." (Citation and punctuation omitted.) *Miller v. Cole*, 289 Ga. App. 471, 473 (657 SE2d 585) (2008).

While the trial court here could have determined, in its discretion, that Sellers' evidence was admissible, its decision to exclude it

was not so clearly erroneous that we will disturb it on appeal. The issues involved were complex and required the trial court, which also presided over the first trial in this case, to consider and synthesize a great deal of factual information, argument, and law, which that court was uniquely positioned to do. We give trial courts wide latitude to determine whether to admit or exclude evidence because the answers are not always clear-cut and the trial court is in the best position to make that determination. In making this ruling here, we do not find the trial court abused its discretion. See *Kicklighter v. Woodward*, 267 Ga. 157, 161 (4) (476 SE2d 248) (1996).

3. In his third enumeration, Sellers argues that the trial court erred in denying his request to charge the jury on concurrent negligence and in charging the jury on intervening causation. Sellers contended the concurrent negligence charge should have been given because Burrowes insinuated that Dr. Kimani or the nurses were to blame by presenting evidence that Dr. Kimani was in charge of care in the ICU and if anyone should have ordered restraints it should have been him. Burrowes testified only that Kimani and the ICU nurses were on station and could have ordered soft restraints for Mrs. Sellers if any of them had seen the need for doing so, and Kimani testified he saw no need to restrain Mrs. Sellers.

Sellers asked the trial court to charge the jury that

> when two or more causes operate directly or happen together in bringing about an injury, there can be a recovery against one or all of the responsible parties. The mere fact that the injury would not have been sustained if only one of the acts of negligence had occurred does not of itself prevent (or limit) the other act from constituting the proximate cause. If all acts of negligence contributed directly and concurrently or together in bringing about the injury, they together constitute the proximate cause. . . .

The charge then said in essence that Sellers could recover from Burrowes as a joint tortfeasor. But as the trial court noted, the record contained at most only intimations that Kimani was negligent. "Because there was no evidence presented that the other doctor was negligent, a charge on concurrent negligence was not warranted and the trial court did not err in refusing to give [Sellers'] requested charge on that issue." *Byrd v. Daus*, 218 Ga. App. 145, 147 (3) (460 SE2d 819) (1995). Absent expert testimony that Kimani deviated from the standard of care, the trial court did not err in not giving the request to charge.

YALE LAW LIBRARY

The trial court also did not err in charging the jury that

> there can be no proximate cause where there has intervened between the act of the defendant and the injury to the plaintiff, an independent act or omission of someone other than the defendant which was not foreseen by the defendant, was not triggered by the defendant's act, and which was sufficient in and of itself to cause the injury.

In this case, evidence existed that even if Burrowes deviated from the standard of care by not administering blood thinners, which led to the development of a blood clot which caused cardiac arrest, she was recovering when she extubated herself, which led to the second cardiac arrest, brain damage, and death. "[T]he ultimate resolution of whether a subsequent act [such as Mrs. Sellers' self-extubation] was foreseeable for proximate cause purposes involves a public policy determination that is best left to a jury except in rare cases." *Walker v. Giles*, 276 Ga. App. 632, 646 (2) (624 SE2d 191) (2005).

*Judgment affirmed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED MARCH 8, 2010.

*Joshua Sacks, John F. Salter, Jr., William G. Pope*, for appellant.
*Hall, Booth, Smith & Slover, Jack G. Slover, Jr., Shaun Daugherty*, for appellees.