A10A1047, A10A1048. JOHNSON v. LEIBEL et al.; and vice versa.
(703 SE2d 702)

DOYLE, Judge.

Mary Johnson, M.D., sued Steven K. Leibel and his law firm, Steven K. Leibel & Associates, P.C. (collectively "Leibel"), alleging

that he committed legal malpractice when he represented her in a lawsuit against Scottish Rite Hospital ("SRH"). After a Fulton County jury awarded Johnson $2 million,[1] Leibel filed a motion for judgment notwithstanding the verdict ("JNOV") and a motion for new trial based on juror misconduct. The trial court granted Leibel's motion for new trial and denied his motion for JNOV. We granted Johnson's application for interlocutory appeal challenging the grant of Leibel's motion for new trial in Case No. A10A1047, and Leibel cross-appealed the denial of his motion for JNOV in Case No. A10A1048. For reasons that follow, we reverse the grant of the motion for new trial in Case No. A10A1047 and affirm the denial of the motion for JNOV in Case No. A10A1048.

Construed in favor of the verdict,[2] the record shows that Johnson, a pediatric neurosurgeon, sued SRH in the Northern District of Georgia in 1996, seeking damages for age and gender discrimination.[3] Johnson was represented by Leibel. The magistrate judge dismissed Johnson's state law claims and granted summary judgment to SRH on the remaining claims, concluding that Johnson failed to establish that SRH's "actions were discriminatorily motivated or that the proffered justifications were pretextual." The district court adopted the magistrate judge's findings and granted summary judgment to SRH. Leibel filed a motion for reconsideration on Johnson's behalf, which the district court denied.[4] Leibel then filed a notice of appeal, and the Eleventh Circuit Court of Appeals dismissed the appeal as untimely.[5]

Johnson filed the instant legal malpractice action against Leibel, alleging that he failed to introduce available evidence in opposition to SRH's summary judgment motion, which would have created issues of fact, and that he failed to file a timely notice of appeal of the judgment. After the jury returned a verdict in favor of Johnson,

---

[1] The verdict was increased to a $2,757,378.85 judgment based on Johnson's $999,999 pretrial unliquidated damages demand pursuant to OCGA § 51-12-14 (a).

[2] See *Gibson v. Talley*, 162 Ga. App. 303, 305 (2) (291 SE2d 72) (1982).

[3] Johnson's claims included allegations that (1) she had to undergo repeated reviews by SRH; (2) SRH diverted patients from her to male surgeons; (3) SRH appointed a younger, male competitor to be chief of neurosurgery, even though she was board-certified and had more experience; (4) she was intentionally excluded from SRH clinics, which were a vital source of patient referrals; (5) she had to follow onerous rules that applied only to her; (6) her admissions were monitored, and male doctors proctored her surgeries; and (7) she had to constantly defend her work, despite "glowing recommendations" during frequent reviews by SRH.

[4] Leibel filed a motion for reconsideration on March 18, 1999, 15 days after the March 3, 1999 judgment. Former Rule 59 (e) of the Federal Rules of Civil Procedure required that motions for reconsideration be filed within ten days of the judgment in order to toll the time to appeal a final judgment.

[5] The notice of appeal was filed on May 5, 1999.

Leibel filed a motion for JNOV, and he also filed a motion for new trial based on a juror's failure to disclose during voir dire that he had been sued by Leibel in 1992. The trial court granted Leibel's motion for new trial and denied his motion for JNOV, and these appeals followed.

## Case No. A10A1047

1. Johnson argues that the trial court erred by granting Leibel's motion for new trial based on juror misconduct. We agree.

Arthur Letchas, the mayor of the City of Alpharetta, was one of the jurors. During voir dire, Letchas acknowledged that he previously had been involved in a number of lawsuits in connection with his various roles as an elected official for Alpharetta, but stated that nothing about those cases "would influence [his] ability to be fair in this case." Neither party asked Letchas any additional questions about those lawsuits.

On November 3, 2008, more than five weeks after the trial, Leibel filed a "Motion for New Trial for Juror Misconduct," stating that

it has been discovered that the foreperson of the jury, Arthur Letchas, had been personally sued by the Defendants, including the taking of his deposition by Defendant Leibel for purposes of prosecuting Mr. Letchas. This information was not provided by Mr. Letchas in response to direct questioning during voir dire.

On January 20, 2009, Leibel filed an affidavit, which stated that he did not recognize any of the jurors during voir dire. Leibel was not present for the jury's verdict, but he later learned that Letchas "left the courtroom quickly" after the trial court excused the jurors, and Leibel "thought it was odd that [Letchas] was apparently unwilling to talk with the lawyers who tried the case, given that he was a politician." After researching Letchas on the Alpharetta website, Leibel then recalled that Leibel had sued the City of Alpharetta on behalf of a client more than 16 years previously. After further investigation, Leibel learned that he individually named Letchas as a defendant in the previous case (along with eight other city officials),[6] and that he had deposed Letchas.[7] The defendants ultimately obtained summary

---

[6] Letchas was represented in the lawsuit by an attorney from the Drew, Eckl & Farnham law firm. A separate lawyer from Drew, Eckl & Farnham represented Leibel in the instant case.

[7] According to the deposition transcript, which was included in the appellate record, Letchas's 1992 deposition lasted one hour.

judgment in the case. In his affidavit, Leibel stated:

> I did not remember Arthur Letchas at all until my research after the verdict. If I had remembered him and particularly the adversarial context in which we had had prior contact, or if he had disclosed the relationship in response to the questions on voir dire, I would have asked my counsel to challenge [Letchas] for cause and to strike him from the jury panel.

In an affidavit prepared in response to the motion for new trial, Letchas stated that he did not recall that he had been a defendant in the lawsuit filed by Leibel until after Johnson's attorney contacted him and so advised him, nor did Letchas independently recall that he was defended in that lawsuit by a lawyer from the same firm that represented Leibel. Letchas, who was involved in 35 lawsuits in his capacity as councilman and mayor of Alpharetta, averred that nothing about his previous contact with Leibel affected his ability to be fair and impartial, and Letchas "was in no way influenced by any past contact with Mr. Leibel or with [Leibel's attorney's] law firm."

The trial court granted Leibel's motion for new trial based on juror misconduct without explanation. Johnson challenges the trial court's ruling, arguing that (1) Leibel waived any argument regarding Letchas's position on the jury by failing to exercise due diligence and to question Letchas further; and (2) Leibel failed to show that Letchas gave an untruthful answer during voir dire or that a correct response would have provided a valid challenge for cause.

Pretermitting whether Leibel waived this enumeration by his conduct at trial, we agree that Leibel failed to show bias or prejudice resulting from Letchas's failure to disclose that Leibel had represented the plaintiff in a lawsuit against Letchas 16 years before trial.

> To invalidate the result of a . . . trial because of a juror's mistaken, though honest, response to a question, is to insist on something closer to perfection than our judicial system can be expected to give. A trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on voir dire examination. *We hold that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a*

*challenge for cause.* The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.[8]

The Supreme Court of Georgia has held that "motions for new trial based upon alleged juror bias involve determinations best left to the sound discretion of the trial judge."[9]

Here, when asked whether he had ever been involved in a lawsuit, Letchas responded that "there are several entities that have sued the city at times," clarifying that they sued him in his official capacity and that "[n]othing about [the suits] would influence [his] ability to be fair in this case." He also responded to questions regarding previous employment. When the potential jurors were asked whether they knew or had heard of Leibel or his law firm, Letchas apparently remained silent. But given Letchas's affidavit testimony that he had no recollection of Leibel or his firm, combined with the fact that Leibel similarly failed to recognize Letchas, there is nothing in the record to support Leibel's assertion that Letchas failed to answer honestly.[10] And, after he was reminded that Leibel had sued and deposed him, Letchas stated in his affidavit that nothing about his previous contact with Leibel affected his ability to be fair and impartial. Thus, Leibel has also failed to demonstrate that Letchas's disclosure of his previous dealings with Leibel would have supported a challenge for cause.[11] Based on Leibel's failure to make the requisite showing of bias or prejudice on the part of

---

[8] (Punctuation omitted; emphasis supplied.) *Isaacs v. State*, 259 Ga. 717, 740-741 (44) (e) (386 SE2d 316) (1989), quoting *McDonough Power Equip. v. Greenwood*, 464 U. S. 548, 555-556 (104 SC 845, 78 LE2d 663) (1984). See also *Gainesville Radiology Group v. Hummel*, 263 Ga. 91, 94 (428 SE2d 786) (1993) (holding that "new trials will not be granted unless the movant can demonstrate that: a juror failed to answer or to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause") (punctuation omitted).

[9] *Gainesville Radiology Group*, 263 Ga. at 94, n. 3.

[10] See *Isaacs*, 259 Ga. at 740 (44) (e) (juror was not dishonest in failing to disclose that she was molested as a child on her juror questionnaire because "she had no real memories of it"; another juror was not dishonest in failing to disclose that two of his friends were killed by a drunk driver because the juror explained that "he did not think about it").

[11] See *Gainesville Radiology Group*, 263 Ga. at 93-94 (appellant failed to demonstrate bias or prejudice based on juror's failure to respond to a voir dire question because there was no showing that a truthful response would have provided a valid basis for a challenge for cause); *Isaacs*, 259 Ga. at 741 (44) (e) (motion for new trial properly denied because "in view of [the jurors'] overall testimony, including their belief that the incidents [that they failed to disclose] did not affect their ability to be fair and impartial jurors, [neither juror] would have been excludable for cause if the information had been disclosed before trial"); *McCann v. Kelley*, 209 Ga. App. 179, 181 (433 SE2d 130) (1993) (appellant failed to make the requisite showing of bias or prejudice based on a juror's failure to respond that he was opposed to lawsuits because the juror stated in his affidavit that "he had no bias against any individual who might choose to bring a lawsuit," and there was no evidence that the juror displayed bias during his jury service).

Letchas, we conclude that the trial court abused its discretion by granting Leibel's motion for new trial.

### Case No. A10A1048

2. Leibel argues that the trial court erred by admitting certain portions of the testimony of Peter Spanos, Johnson's expert, arguing that it invaded the jury's role. "We review this ruling under an abuse of discretion standard."[12]

> To prevail in a legal malpractice action, a plaintiff must show that the attorney [s]he employed was negligent and that this negligence was the proximate cause of the claimed harm. The plaintiff must show that but for the attorney's negligence in the underlying case, the plaintiff would have prevailed.[13]

During direct examination, Spanos testified that in his opinion, Leibel violated the standard of care by failing to present specific evidence in opposition to SRH's motion for summary judgment.[14] Plaintiff's counsel then asked Spanos whether he thought that the available evidence, including the evidence that Leibel failed to produce, established that Johnson had a prima facie case of discrimination and that SRH's motives for its actions were pretextual, cautioning Spanos that "I am not asking you to, in any way, suggest to this jury what it should do in this case, but rather my questions go to your opinion as to what ought to have happened in the underlying case based on your education, training[,] and experience." After the trial court overruled Leibel's objection to the testimony, Spanos testified that there was "powerful evidence of pretext," that Johnson made a prima facie showing of age and gender discrimination, and that the evidence of pretext "tipped the balance" in her favor. Leibel argues that this testimony was inadmissible because it improperly usurped the jury's role.

Leibel cites *Sotomayor v. TAMA I, LLC*,[15] for the proposition that

> [t]he scope of what is admissible as expert opinion testimony is not unlimited. It is the established rule in Georgia,

---

[12] *Blackwell v. Potts*, 266 Ga. App. 702, 705 (1) (598 SE2d 1) (2004).

[13] (Citation and punctuation omitted). Id., citing *Ross v. Edwards*, 253 Ga. App. 773 (1) (560 SE2d 343) (2002).

[14] Spanos also opined that Leibel breached the standard of care by failing to timely file a Rule 59 (e) motion for reconsideration of the federal trial court's order and by filing an untimely notice of appeal.

[15] 274 Ga. App. 323 (617 SE2d 606) (2005) (physical precedent only).

> that where (a) the path from evidence to conclusion is not shrouded in the mystery of professional skill or knowledge, and (b) the conclusion determines the ultimate issues of fact in a case, the jury must make the journey from evidence to conclusion without the aid of expert testimony. A party may not bolster his case as to the ultimate issue with expert testimony *when the jury could reach the same conclusion independently of the opinion of others.*[16]

Although this quote is clearly a correct statement of the law, Leibel's reliance on the case is misplaced. As we stated in *Sotomayor*, the prohibition against allowing a party to bolster his case with expert testimony as to the ultimate issue is limited to those circumstances in which "the jury could reach the same conclusion independently of the opinion of others."[17] The prohibition does not extend to those cases in which a jury requires expert testimony as to the issue of causation. For example, we require expert testimony to provide proximate cause in medical malpractice cases.[18] In the same vein, expert testimony is admissible to prove proximate cause in those legal malpractice cases in which a lay person could not competently determine whether or not the negligence of the attorney proximately caused the plaintiff's damages, i.e., whether or not the plaintiff would have prevailed in the underlying action.[19] As Johnson argues, this holding comports with the pattern jury instruction in legal malpractice cases entitled, "Skill Required of Attorney," which provides in pertinent part that "A client suing his/her attorney in a case not only *must prove by expert legal testimony that the claim* was valid and *would have resulted in a judgment in the client's favor*, but

---

[16] (Punctuation omitted; emphasis supplied.) Id. at 326 (1).

[17] (Punctuation omitted.) Id.

[18] See *Zwiren v. Thompson*, 276 Ga. 498, 500-501 (578 SE2d 862) (2003) ("In order to establish proximate cause by a preponderance of the evidence in a medical malpractice action, the plaintiff must use expert testimony because the question of whether the alleged professional negligence caused the plaintiff's injury is generally one for specialized expert knowledge beyond the ken of the average layperson. Using the specialized knowledge and training of his field, the expert's role is to present to the jury a realistic assessment of the likelihood that the defendant's alleged negligence caused the plaintiff's injury.") (citations omitted).

[19] See *Ross*, 253 Ga. App. at 774 (1) (in a legal malpractice case, an attorney could give an expert legal opinion that, if a particular expert had testified in the underlying case, "it would have provided the evidence necessary for the jury to render a different verdict"). See, e.g., *Meyer v. Mulligan*, 889 P2d 509, 516 (III) (C) (Wyo. 1995) ("In the vast majority of legal malpractice actions in which expert testimony is required, the plaintiff must establish through expert testimony not only the applicable standard of care and the breach of that standard, but also that the alleged breach of the standard of care was the proximate cause of his injury. The reasoning for requiring expert evidence to prove the standard of care is because lay people are not competent to pass judgment on legal questions.") (citations, punctuation and emphasis omitted).

also that the judgment would have been collectible in some amount. . . ."[20] Then, as Leibel did in this case, the defendant may present opposing expert legal testimony, leaving the jury to evaluate the credibility of the experts and to weigh their testimony accordingly. In this case, given the legal complexities associated with Johnson's discrimination claims against SRH in the underlying action, we conclude that the trial court did not abuse its discretion by admitting the testimony of Johnson's expert.

3. Leibel further contends that the trial court erred by denying his motion for JNOV because Johnson failed to prove that an alleged violation of the standard of care proximately caused her damages.

(a) *Summary judgment.* At trial, Johnson's expert, Spanos, opined that Leibel failed to obtain affidavits or depositions from four neurosurgeons in defense of SRH's motion for summary judgment, and those witnesses' testimony given in subsequent depositions established evidence of pretext on the part of SRH. On appeal, Leibel argues that Spanos was mistaken in believing that the testimony of the neurosurgeons did not appear in the record before the district court, pointing out that Spanos conceded at trial that the deposition transcripts of Drs. *Webster, Simon, Morrissey, and Johnson* were in fact included in the district court record. But as Johnson points out in her appellate brief, Spanos specifically criticized Leibel's failure to include the testimony of Drs. *Cheek, McLone, and Reigel.*

Without mentioning Drs. Cheek, McLone, or Reigel by name, Leibel asserts on appeal that "the evidence by the three neurosurgeons who reviewed a handful of Dr. Johnson's charts . . . was in the record."[21] Even if we were to assume that Leibel was referring to Cheek, McLone, and Reigel, Leibel does not provide a citation to the record to support this assertion. Leibel also maintains that "[t]he brief filed by Leibel on behalf of Johnson in the district court contained the relevant information," providing a citation to the record. The record citation refers to a single page of Leibel's brief to the district court, which page states that three pediatric neurosurgeons reviewed Dr. Johnson's charts in 1988 and gave favorable reviews, citing to an exhibit to the deposition of "Webster." At no point in his appellate brief does Leibel provide a citation to the appellate record for the deposition of Webster.[22] Based upon our

---

[20] (Emphasis supplied.) Suggested Pattern Jury Instructions, Vol. I: Civil Cases, § 62.400 (citing *Riddle v. Driebe*, 153 Ga. App. 276 (265 SE2d 92) (1980)).

[21] (Emphasis omitted.)

[22] As we "have repeatedly stated[, it] is not the function of this court to cull the record on behalf of a party in search of instances of error. The burden is upon the party alleging error to show it affirmatively in the record." (Punctuation omitted.) *Helms v. Franklin Builders, Inc.*, 305 Ga. App. 863 (700 SE2d 609) (2010). Nevertheless, we have culled through the 29-volume

reading of Johnson's appellate response brief, it appears that the exhibit to Webster's deposition is an uncertified letter written by Drs. Epstein, McLone, and Cheek in support of Johnson. But because Johnson also fails to provide an appellate record citation for any such letter, we cannot make a determination regarding its admissibility, nor can we analyze its contents.

Even if the letter did appear in the record and was admissible, however, it would not require reversal in this case.

> A motion pursuant to OCGA § 9-11-50 (b) for [JNOV] may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence, or there is insufficient evidence to make a "one-way" verdict proper, judgment (notwithstanding the verdict) should not be awarded. In considering the motion, the trial court must view the evidence in the light most favorable to the party who secured the jury verdict and who opposed the motion for judgment notwithstanding the verdict. Likewise, on appeal from a trial court's rulings on [a] motion[ ] for [JNOV], we review and resolve the evidence and any doubts or ambiguities in favor of the verdict; . . . judgments notwithstanding the verdict are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict.[23]

At best, the letter from the physicians would create a conflict in the evidence or undermine the credibility of Johnson's expert, neither of which provides a proper basis for reversing the denial of a JNOV.[24] Accordingly, this enumeration is without merit.

(b) *Motion for reconsideration and notice of appeal*. Leibel also argues that because the trial court ruled that any appeal of the district court's ruling would have been unsuccessful, he was entitled to a JNOV as to Johnson's claim based upon his failure to file a timely Rule 59 (e) tolling motion for reconsideration or appeal.

We have been unable to locate the verdict form in the record. However, the trial transcript indicates that the verdict form, which neither party objected to, was general, with no indication as to which

---

record and located a copy of the 240-page compressed transcript of the deposition of Dorothy Rebecca Webster; there are no exhibits attached thereto.

[23] (Citation and punctuation omitted.) *Fertility Technology Resources v. Lifetek Medical*, 282 Ga. App. 148, 149 (637 SE2d 844) (2006).

[24] See id.

claim formed the basis of the award.[25] Because the verdict form failed to specify which of the claims formed the basis of the jury's award, it is possible to construe the verdict as an award based solely on Johnson's claim that Leibel failed to sufficiently respond to SRH's motion for summary judgment. " 'Presumptions favor the validity of verdicts and a construction, if possible, will be given which will uphold them.' "[26] It follows that the trial court did not err by denying Leibel's motion for JNOV on this ground.[27]

4. Next, Leibel contends that the trial court erred by not giving his requested charge on judgmental immunity. The proposed charge read: "There can be no liability for acts and omissions by an attorney in the conduct of litigation which are based on an honest exercise of professional judgment." We find no error.

> It is well established that jury instructions must be read and considered as a whole in determining whether the charge contained error. Moreover, *a trial court does not err in refusing to give a requested charge that is not legally accurate and adjusted to the evidence.* A request to charge must embody a correct, applicable and complete statement of law, legal and perfect in form and adjusted to the pleadings and evidence; it must not be argumentative or seek an expression of opinion on the part of the court; and it must not be so phrased so as to have the tendency to confuse and mislead the jury or to becloud the issues in the case.[28]

Pretermitting whether Leibel's requested charge is a complete statement of the law, he does not provide a citation to the record showing that he testified or argued to the jury that his decisions were strategic or based on an honest exercise of professional judgment.[29] Thus, Leibel has failed to demonstrate that his requested charge was

---

[25] The trial court instructed the jury that the form of their verdict was either: "We, the jury, find for the plaintiff in the amount of blank dollars," or "We, the jury, find for the defendant."

[26] *Southeastern Security Ins. Co. v. Hotle*, 222 Ga. App. 161, 164 (1) (e) (473 SE2d 256) (1996).

[27] See *Esprit Log &c. Homes v. Wilcox*, 302 Ga. App. 550, 554-555 (3) (691 SE2d 344) (2010); *Southeastern Security*, 222 Ga. App. at 164 (1) (e).

[28] (Punctuation and footnotes omitted; emphasis supplied.) *Wadkins v. Smallwood*, 243 Ga. App. 134, 139 (5) (530 SE2d 498) (2000).

[29] In her response brief, Johnson asserts that there was no evidentiary basis in the record for a charge on judgmental immunity. Leibel filed a reply brief, which addressed several of his enumerations, but he did not contest or even address Johnson's assertion regarding the lack of evidence to support the requested charge.

tailored to the evidence.[30] Further, we have reviewed the trial court's charge (which included the pattern jury charges on legal malpractice[31]) in its entirety, and we conclude that the trial court fully and accurately instructed the jury on the issues to be decided. Accordingly, the trial court did not err by refusing to give the requested charge.[32]

5. Leibel further contends that the trial court erred by permitting Johnson to submit evidence and argument that Leibel missed the appellate deadline in the underlying case, arguing that it was prejudicial and irrelevant. Again, we find no basis for reversal.

> In the context of a legal malpractice case in which the negligence alleged is the failure of an attorney to file an appeal, proximate cause may be established by showing that the appellate court would have reversed and that, upon remand to the lower court, the client would have obtained a more favorable result.[33]

"The question of whether an appeal would have been successful is a question of law, exclusively within the province of judges."[34] Applying this principle, the trial court concluded as a matter of law that Johnson's appeal would not have been successful, and the court so instructed the jury, charging the jurors that

> the issue of whether Plaintiff's appeal to the [Eleventh] Circuit Court of Appeals wouldn't have succeeded is a question of law that has been decided by the court. This court has decided that Plaintiff's appeal to the 11th Circuit Court of Appeals would not have succeeded if the appeals court had considered the merits based on the state of the record before the court at that time.[35]

Leibel argues that because the trial court had already decided that Johnson's appeal would not have succeeded, the testimony of mul-

---

[30] See id. at 141 (5) (d).

[31] See Suggested Pattern Jury Instructions, Vol. I: Civil Cases, § 62.400.

[32] See *Wadkins*, 243 Ga. App. at 140 (5) (a) ("[E]ven if the requested charge is considered appropriate, failure to give it in the exact language requested is not reversible error because the trial court accurately and fully charged the relevant law.").

[33] (Punctuation omitted.) *Kidd v. Ga. Assn. of Educators*, 263 Ga. App. 171, 174 (587 SE2d 289) (2003).

[34] (Punctuation omitted.) *Dow Chemical Co. v. Ogletree, Deakins, Nash, Smoak & Stewart*, 237 Ga. App. 27, 30 (2) (514 SE2d 836) (1999).

[35] We note that the parties do not object on appeal to the trial court's conclusion that the appeal would have been unsuccessful, nor do they object to the trial court's instruction to the jury on this issue.

tiple witnesses and Johnson's repeated argument about the missed appellate deadline were irrelevant and "highly prejudicial."

"Whether to admit evidence objected to on the ground of relevancy is within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion."[36] "Evidence having a tendency to establish facts in issue is relevant and admissible, and no matter how slight the probative value, our law favors admission of relevant evidence."[37] Here, considering Johnson's claims and Leibel's defense that his actions did not fall below the standard of care, we cannot conclude that the evidence regarding the missed appellate deadline was irrelevant. Accordingly, we find no abuse of discretion in the trial court's admission of evidence that Leibel failed to file a timely appeal of the summary judgment motion.[38]

6. Finally, Leibel argues that the trial court erred by excluding evidence about a medical malpractice action brought against Johnson after her medical privileges at SRH were suspended. At the outset, we note that Leibel has failed to support this enumeration with citation of authority, in violation of our rules, and therefore, this enumeration may be deemed abandoned.[39]

Notwithstanding Leibel's abandonment of this argument, we find no abuse of discretion. As we stated in Division 5, supra, the decision as to whether to exclude evidence on relevancy grounds lies within the sound discretion of the trial court, and we will not reverse a decision to exclude evidence absent a clear abuse of discretion.[40] Here, the trial court permitted Leibel to introduce the testimony of the woman whose son Johnson treated, including her dissatisfaction with Johnson's treatment. The trial court excluded, however, any evidence from the mother or from her attorney regarding the resulting medical malpractice case she filed against Johnson.[41] Under these circumstances, we find no abuse of discretion in the exclusion of evidence that the mother filed a medical malpractice action against Johnson.[42]

---

[36] *Moxley v. Moxley*, 281 Ga. 326 (2) (638 SE2d 284) (2006).

[37] (Punctuation omitted.) *Hudson v. State*, 234 Ga. App. 895, 901 (3) (b) (iii) (508 SE2d 682) (1998).

[38] See id.

[39] See Court of Appeals Rule 25 (a) (3) & (c) (2); *Sirdah v. North Springs Assoc.*, 304 Ga. App. 348, 351-352 (2) (696 SE2d 391) (2010).

[40] See *Moxley*, 281 Ga. at 326 (2).

[41] We note that it is not clear from either Leibel's brief, nor the portions of the record to which he refers in support of this motion, whether the malpractice case was resolved and, if so, which party prevailed.

[42] See *Tucker Nursing Center v. Mosby*, 303 Ga. App. 80, 86 (4) (692 SE2d 727) (2010) (affirming the exclusion of evidence that the trial court concluded was irrelevant and

*Judgment reversed in Case No. A10A1047. Judgment affirmed in Case No. A10A1048. Andrews, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 23, 2010 —

*Bird, Loechl, Brittain & McCants, Wendell R. Bird, Richard L. Brittain, Jones, Jensen & Harris, Jenny E. Jensen, Richard E. Harris*, for appellant.

*Hawkins, Parnell, Thackston & Young, Michael J. Goldman, Christine L. Mast, Joseph H. Wieseman, Balch & Bingham, Michael J. Bowers, David J. Marmins*, for appellees.

---

potentially confusing to the jury); *Sellers v. Burrowes*, 302 Ga. App. 667, 672 (2) (691 SE2d 607) (2010) ("We give trial courts wide latitude to determine whether to admit or exclude evidence because the answers are not always clear-cut and the trial court is in the best position to make that determination.").