## A11A0321. JONES, MARTIN, PARRIS & TESSENER LAW OFFICES, PLLC v. WESTREX CORPORATION.
### (712 SE2d 603)

BARNES, Presiding Judge.

This case involves the value of a discharged law firm's attorney fee lien and the proper procedures and evidence for determining that value. Martin & Jones[1] had a contingency fee contract which provided it was entitled to a "reasonable fee for the work performed up to that time" if the client dismissed it before the case ended. The client dismissed Martin & Jones, which filed an attorney fee lien in the underlying case. After six months, the case settled for $2.5 million, and the new firm moved to discharge the lien. The fee lien was tried before a jury, which awarded Martin & Jones $20,750 in fees. Martin & Jones appeals, and for the reasons that follow, we affirm the judgment entered on the verdict.

Martin & Jones enumerates six errors on appeal, contending that the trial court erred in (1) denying its motion to intervene in the underlying suit as a party, (2) ordering it to trial on the attorney fee lien on less than 24 hours notice, (3) concluding as a matter of law that the firm was required to present evidence of hours and rates to establish the value of its services, (4) "excluding evidence of work performed and results accomplished," and (5) failing to charge the jury on quantum meruit. It also argues that (6) the evidence did not support the judgment.

1. Martin & Jones contends the trial court erred in denying its motion to intervene as a party in the underlying suit and in requiring

---

[1] The firm's name is Jones, Martin, Parris & Tessener Law Offices, PLLC, and its Atlanta office is known as Martin & Jones. For ease of reference, we will refer to the firm as Martin & Jones.

it to proceed to trial on the issue of reasonable fees when it did. It asserts that it had a right to intervene because it had an interest in the settlement proceeds, and that its rights were impaired because, as a non-party, it was unable to conduct discovery. It also argues that it was harmed by the denial of the motion because neither the former client — Westrex Corporation — nor the opposing party — the City of Atlanta — had an interest in establishing Martin & Jones's attorney fee claim.

The attorney lien statute, OCGA § 15-19-14 (b),

> confers upon an attorney at law the right to impose a lien upon actions, judgments, and decrees for money, and prevents the satisfaction of such an action, judgment, or decree until the claim of the attorney for his fees is fully satisfied. The lien arises upon the institution of the suit; it is fixed as soon as the suit is filed and may not be divested by any settlement or contract, it matters not by whom the settlement may have been made or attempted. After suit has been filed it can not be settled so as to defeat the lien of the attorney for his fees.

(Citations, punctuation and footnote omitted.) *Howe & Assocs., P.C. v. Daniels*, 280 Ga. 803, 804 (631 SE2d 356) (2006), aff'g 274 Ga. App. 312 (618 SE2d 42) (2005). Under OCGA § 9-11-24 (a) (2), a party may intervene as a matter of right if it has "an interest relating to the property or transaction which is the subject matter of the action" and is "so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." However,

> [i]ntervention must be timely, whether asserted as a right or as a matter of discretion. . . . The decision whether application for intervention is timely and the showing sufficient are matters within the sound discretion of the trial court. The most important factor is whether intervention will prejudice existing parties in the case.

(Citations omitted.) *Sta-Power Indus. v. Avant*, 134 Ga. App. 952, 958 (3) (216 SE2d 897) (1975).

We find no abuse of discretion in the trial court's denial of the motion to intervene. *Sta-Power Indus.*, 134 Ga. App. at 958 (3). Martin & Jones was discharged from the case on October 28, 2009 and filed its lien on November 18, 2009. The firm knew before May 3, 2010 that its former client Westrex and the City had reached a

settlement agreement, but did not move to intervene as a party until June 30, 2010. Martin & Jones was allowed to prosecute its fee lien to the jury as a party, making opening statements, calling witnesses, introducing evidence, and arguing in closing. The only additional benefit Martin & Jones could have obtained as an intervener was the ability to conduct discovery as a party. Granting the motion and reopening discovery, as discussed further in Division 2, would have prejudiced the existing parties — Westrex and the City — who were only days from being able to exchange the settlement check for a final release, but whose case could not be fully resolved until the lien was discharged. Accordingly, we find no abuse of discretion in the trial court's denial of the motion to intervene.

2. Martin & Jones also asserts the trial court erred in denying its motion for continuance and ordering it "to trial on less than 24 hours notice," arguing it was denied adequate notice of trial or the opportunity to conduct discovery. "[T]he time for conducting discovery rests in the sound discretion of the trial court, . . . [which] has wide discretion to shorten, extend, or reopen the time for discovery, and its decision will not be reversed unless a clear abuse of that discretion is shown." (Citations and punctuation omitted.) *Lawrence v. Direct Mtg. Lenders Corp.*, 254 Ga. App. 672, 673 (1) (563 SE2d 533) (2002). Further, "trial courts have discretion to set their trial calendars and manage the call of cases for trial[,] . . . limited by the due process requirement . . . that notice be reasonable . . . under the totality of the circumstances." *Thornton v. Nat. American Ins. Co.*, 269 Ga. 518, 518-519 (1) (499 SE2d 894) (1998). Our Supreme Court in *Thornton* held that, as a general rule, trial courts should provide at least two business hours notice to parties on a trial calendar that the case was being called for trial. Id. at 519 (3).

The record indicates that the firm had notice that the underlying case was included on trial calendars in February and April 2010, and was continued to the July 2010 trial calendar after Westrex announced the settlement in open court. Martin & Jones received Westrex's May 28, 2010, motion to discharge the fee lien promptly so the case could be settled, and received the company's "Notice of Hearing" asking that the motion be heard on July 6, 2010.

The trial court sent Westrex and the City notice that their case was set for a calendar call on July 6, 2010 to determine the schedule for the court's July 2010 civil trial calendar, and ordered the recipients "to ensure that all Parties and Counsel have adequate notice of the Calendar."[2] Counsel for Westrex had informed Martin &

---

[2] While Martin & Jones asserts that litigation and discovery on the lien "would not have been ripe until after the settlement was reached and approved by the city council and the funds

Jones of its intention to announce ready for trial at the July 6, 2010, calendar call and offered it the opportunity to inspect and copy all of Westrex's files related to this litigation. Westrex had also offered to permit the deposition of its president and both of the attorneys from the new firm, but Martin & Jones made no effort to conduct any discovery.

Finally, the firm argues that by being put on trial so quickly, it was denied the opportunity to develop and present expert testimony regarding the value of its services. However, both the managing partner of the parent firm and the Atlanta partner of Martin & Jones were present and testified at trial. Based on their testimony, either lawyer could have testified as an expert about the value of the firm's services.

The trial court did not err in denying Martin & Jones's motion for a continuance. The firm received more than two business hours of notice. While the firm argues that the lien was not published on a trial calendar, the underlying case was. Martin & Jones had known for two months that the case had been settled and that the lien was the only issue remaining. As the trial court noted before the trial began, the firm had made its own determination of the lien's value. In its final judgment, the trial court found that by July 6, 2010, Martin & Jones had "virtually all of the relevant facts" regarding the value of the work it had performed before its discharge, which was the issue presented at trial for the jury to resolve. Notice was adequate and reasonable considering the totality of the circumstances, and the trial court did not abuse its discretion in requiring Martin & Jones to present its lien claim during the trial calendar on which the underlying case was set.

3. In related enumerations of error, Martin & Jones argues that the trial court erred in concluding as a matter of law that establishing the value of the firm's services required presentation of hours and rates, in excluding evidence of the "results obtained," the value of the case, or the amount of the settlement, and in declining to give its requested charge on quantum meruit. In essence, Martin & Jones asserts that the jury should have been allowed to determine the amount of its reasonable fee for work performed before its discharge in light of the new firm's $2.5 million settlement, rather than a reasonable fee based upon an hourly rate multiplied by the number of hours spent on the case.

All parties agreed that Martin & Jones was not entitled to a contingency fee, because it was discharged before the contingency

disbursed, none of those events were relevant to a determination of the "reasonable value" of the firm's work, as discussed in Division 3.

occurred. All parties also agreed that the firm was entitled to a reasonable fee for the work it performed before discharge. The dispute is about the evidence a jury should be able to consider when evaluating the amount of the fee. "Questions of relevancy of evidence, which includes the issue of materiality, are for the court, and in the absence of an abuse of judicial discretion, this court will not interfere." (Citation omitted.) *Kilpatrick v. Foster*, 185 Ga. App. 453, 457 (4) (364 SE2d 588) (1988).

(a) The trial court in this case held that the "reasonable fee for the work performed" was determined by the value of the discharged attorney's services to the client, and excluded evidence of the amount of the $2.5 million settlement, the amount of damages estimated by Westrex's owner or expert witnesses, and the amount of the verdicts and settlements Martin & Jones had obtained in similar cases. The court did not require Martin & Jones to present evidence of the number of hours it spent on the case or of its hourly rate, and the firm did not do so. In fact, its partners testified that they did not keep track of their hours. Rather, the court held consistently that the value to Westrex of the work Martin & Jones performed up to the time it was discharged was not affected by events that occurred after the discharge.

Martin & Jones argues that the trial court erred in prohibiting it from presenting evidence of the "results obtained" — that is, the successor firm's final $2.5 million settlement — as a factor in determining its fee, citing *Ellerin & Assoc. v. Brawley*, 263 Ga. App. 860, 861-862 (1) (589 SE2d 626) (2003); *Yetman v. Greer, Klosik & Daugherty*, 225 Ga. App. 397, 399 (1) (483 SE2d 878) (1997), aff'd, *Greer, Klosik & Daugherty v. Yetman*, 269 Ga. 271 (496 SE2d 693) (1998); *Brookhaven Supply Co. v. Rary*, 131 Ga. App. 310, 311 (2) (205 SE2d 885) (1974). The contingency fee contracts in those cases differed from the contract in this case, however, as they included no provision for the payment of attorney fees if the client discharged the firm before the contingency occurred. Thus, the discharged attorney fees could not be calculated under the terminated contract, but only under the equitable provisions of quantum meruit. In this case, the contract specified that the firm was entitled to reasonable fees for work performed up to the date of discharge, and we find no abuse of discretion in the trial court's exclusion of evidence about the amount of the final settlement in Westrex's case against the City.

The trial court also did not err in excluding evidence about Westrex's ante litem notice for $1.5 million in damages, its experts' estimate of the damages, verdicts and settlements in other cases, and "discussions of the value of the case from the perspective of M&J and Westrex." While one of eight factors listed by the Georgia Rules of Professional Conduct to be considered in determining whether a fee

is reasonable is "the amount involved and the results obtained," Rule 1.5 (a) (4) of Bar Rule 4-102 (d), in this case, the trial court did not abuse its discretion in excluding evidence of the perceived value of the claim before Martin & Jones was discharged. As the trial court noted, this claim was for breach of contract damages, not for the quantum meruit value of an unrealized contingent fee. Thus, the court concluded, neither the size of the claim nor the outcome of the case were relevant because the reasonable fee for the contract work performed did not vary with the value of the case.

Accordingly, the court admitted only evidence of the results Martin & Jones obtained before it was discharged. Martin & Jones's partners testified at length about the firm's expertise in these cases and the process by which it developed that expertise. The Atlanta partner testified that, although the City routinely stonewalled property owners who claimed water damages, it responded promptly to claims presented by the firm because of its reputation and ability. He also described the work he had done on the case before the discharge and noted that he did not keep track of his hours.

Considering the record as a whole, including the procedural history of the case, we cannot say the trial court abused its discretion in excluding evidence of how much the client or its experts thought the claim was worth or the amount of Westrex's settlement with the City.

(b) We find no error in the trial court's charges to the jury.

A request to charge must embody a correct, applicable and complete statement of law, legal and perfect in form and adjusted to the pleadings and evidence; it must not be argumentative or seek an expression of opinion on the part of the court; and it must not be so phrased as to have tendency to confuse and mislead the jury or to becloud the issues in the case.

*Bakery Svcs. v. Thornton Chevrolet*, 224 Ga. App. 31, 33 (3) (479 SE2d 363) (1996).

Martin & Jones's request to charge number 2 provided: "The discharge of the attorney by the client does not defeat the attorney's right to be paid; the right to receive compensation comes, not under the contract of employment which is at an end, but under quantum meruit which is protected by the attorney[ ] lien statute." This charge is not adjusted to the evidence. Martin & Jones's right to receive compensation came from its employment contract, not from the equitable provisions of quantum meruit, and thus the trial court did not err in refusing to give this request.

Martin & Jones also argues that the trial court erred in refusing

to give another of its quantum meruit charges, the charge is only described during the charge conference as plaintiff's request to charge "number 3," and Martin & Jones has not described the charge or cited to its location in the record. Without knowing the precise charge requested, we cannot review the trial court's denial of that request. See *Sanders v. Bowen*, 196 Ga. App. 644, 646 (3) (396 SE2d 908) (1990).

Finally, while Martin & Jones argues that the trial court's charge regarding factors considered to determine the reasonable value of a fee was incomplete, absent a written request to charge or plain error, we will not reverse for failure to give an instruction. *Colbert v. State*, 263 Ga. App. 193, 194 (2) (587 SE2d 300) (2003). " 'Plain error' is that which is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice or which seriously affects the fairness, integrity or public reputation of a judicial proceeding." (Citation and punctuation omitted.) *Drug Emporium v. Peaks*, 227 Ga. App. 121, 125 (2) (a) (488 SE2d 500) (1997). This is not such a case. We note that the trial court charged the jury that factors to consider in determining the fee included the time and labor required, the novelty and difficulty of the issues, the skill required, and the experience, reputation, and ability of the lawyers.

4. Finally, the firm contends the evidence does not support the judgment and thus the trial court erred in denying its motion for new trial. We do not agree. In the presentation of its case, Martin & Jones called as witnesses the attorney who represented the City in Westrex's lawsuit, the firm's managing partner from its Raleigh office, and the firm's remaining Atlanta partner. The City's attorney testified that he had worked on many flood and sewer back-up cases with Martin & Jones, whose lawyers had taken the depositions of many city employees in related cases, and that this complaint was substantially similar to all the firm's complaints. In this case, as in others, the City agreed to stipulate to the authenticity of documents to avoid having to coordinate the appearance of City employees who would merely testify that a document was a document, although it did not stipulate that the documents were admissible. The stipulation was not complex and took less than half an hour to prepare.

Eventually, the City's attorney testified, he discovered that the City had paid an insurance subrogation claim related to this incident and decided to admit liability, but that decision resulted from a review of City documents, not from any actions by Martin & Jones. The City's attorney also discussed the length of time he spent on the generally routine written discovery requests and responses in this case. He testified that Martin & Jones filed numerous deposition notices for City employees, all related to the issue of liability and all of whom had been deposed before, but deposed only one witness

before it was discharged, an environmental specialist with the Georgia Department of Natural Resources, Environmental Protection Division, who had never been deposed before. The City had conducted no settlement negotiations or damages review with Martin & Jones before its termination.

The firm's managing partner testified about his diverse contingent fee practice and explained that he had opened the Atlanta office because the two lawyers there had been local counsel in so many water damage cases against the City. He never kept account of the hours spent on his cases and had no default hourly rate, although he had previously obtained hourly fees of $435 and $475 for two successful class actions. He had not participated in the Westrex litigation, but knew that Martin & Jones had spent thousands of hours developing forms for these nuisance cases against the City but had never been completely compensated for all of its previous work. Finally, the partner testified that no other firm could match his firm's expertise in these matters.

Finally, Martin & Jones's Atlanta partner testified that while working on a previous case, discovery obtained from the City led him to direct the firm's paralegal to contact Westrex's owner in March 2007 and send him information about the firm. Westrex contacted the firm about a year later and signed a fee contract with Martin & Jones on February 18, 2009. The firm filed a complaint the next day, February 19, 2009, with interrogatories and requests for production, then after the City failed to respond to the discovery within 45 days the firm pressed for and finally obtained 800 pages of documents, which it reviewed to identify potential witnesses. The partner sent multiple deposition notices, discussed with the City the possibility of using depositions from previous nuisance cases, met with the client, talked to experts about evaluating damages, and researched evidence about the sewer system that had been developed as a result of a federal case, including closed circuit video camera recordings of the interior of the sewer lines. He also obtained a stipulation from the City about document authenticity.

The partner testified that he had no family, worked thirteen to fifteen hours a day, never took more than two or three days off at a time, and had been handling twenty to twenty-five flood or sewer damage cases during the time Martin & Jones represented Westrex, from February 2009 to November 2009. He had handled flood and sewer litigation exclusively since 2003 and had developed the procedures and documents it used over and over in these kinds of cases. He admitted that the City had not stipulated liability before the firm was discharged. Finally, he explained that the firm was not seeking a contingency fee, but was seeking a "reasonable fee" for the work it performed before it was terminated, as provided in paragraph six of

its fee contract with Westrex.

In its closing, Martin & Jones argued that the jury should consider two issues in determining the reasonable value of its work: the case-specific work it performed for Westrex, and all of its earlier work that gave the firm its extensive expertise and allowed it to work efficiently on Westrex's case. It gave examples of how to calculate the value of these fees: if it had worked on the case for fifteen hours a day for nine months, or 540 hours, at a rate of $475 per hour, it would be entitled to $256,500 in fees; or if the jury considered even half of the 6,400 hours Martin & Jones had spent developing its expertise from October 2005 to January 2009, at $250 per hour, its fee would be $800,000.

Westrex called no witnesses and introduced no evidence, but argued that Martin & Jones's own evidence presented at the trial showed it had performed 90 to 180 hours of work on this case, and suggested that a fee of 100 hours times $200 per hour was a reasonable fee under the contract. After deliberating, the jury found that the reasonable fee for the work Martin & Jones performed for Westrex before it was discharged was $20,750.

Having reviewed the record in its entirety, we find no merit in this enumeration that the evidence presented at trial did not support the verdict.

*Judgment affirmed. Adams, J., concurs. Blackwell, J., concurs fully and specially.*

BLACKWELL, Judge, concurring fully and specially.

I join the opinion of the Court in full, including Division 3 (a), in which we conclude that the court below did not abuse its discretion when it excluded certain evidence relating to the amount involved in the underlying litigation between Westrex and the City. I do not understand Division 3 (a) to endorse the idea that the amount involved in a case *never* is relevant in assessing the reasonableness of a fee for the work done by a lawyer in the case, and I would be reluctant to join it if it did. I write separately to explain my views of the relevance of the amount involved and to explain more fully why I think the trial court here did not abuse its discretion when it excluded evidence of the amount involved.

Imagine two lawsuits, in both of which the same theory of liability is asserted and the same method of calculating damages applies, but the amount of damages varies substantially from one to the other. The lawyer and client in one case genuinely and reasonably believe that the client ought to recover $500 in damages, and the lawyer and client in the second genuinely and reasonably believe that the client ought to recover $500 million in damages. A fee of $50,000 for preparing and filing the initial pleadings, preparing and serving written discovery

requests, preparing and serving written responses to discovery requests, identifying and consulting with a potential expert witness, and conducting a deposition almost certainly would be, it seems to me, unreasonable in the $500 case, but it might be a real bargain for the client in the $500 million lawsuit. This is so because one reasonably might expect, I think, that the lawyer in the $500 million case would work longer and think harder about his case, even if he ultimately performs the same kinds of tasks and produces the same kinds of work product as the lawyer in the $500 case. And this is the very reason why, I think, the Rules of Professional Conduct provide that the "amount involved," among many other considerations, may be relevant to the reasonableness of the fee. See Rule 1.5 (a) (4) of the Georgia Rules of Professional Conduct, found in Bar Rule 4-102 (d). I do not mean to suggest that a more significant fee *always* is warranted in a case with more at stake. My point is a small one: the stakes in a case are a factor that sometimes properly may be considered in assessing the reasonableness of the fee.

Nevertheless, I agree with the majority that the exclusion in this case of evidence concerning the amount involved is no reason to reverse the judgment below. In my view, the amount involved in a case is relevant to the reasonableness of a fee for work done in the case when there is some reason to think that the lawyer treated the case differently — that he worked longer on it, that he thought harder about it, or that he did something else different than in other similar cases — because the lawyer and client thought it was worth more. But here, the firm presented no evidence that it treated this case any differently because it thought the case was worth more. To the contrary, it appears that the firm lawyer primarily responsible for the Westrex case had devoted nearly all his time in the past six years to sewer and flood cases. By handling these cases over a long period of time, the firm developed expertise and forms that allowed it to handle similar cases, like this one, in a more efficient manner. For instance, the firm was able to file a complaint in this case the day after Westrex retained the firm, and other documents prepared by the firm on behalf of Westrex, such as discovery requests and responses, were substantially similar to the documents the firm had used in other cases it had litigated against the City. Nothing about the firm's representation of Westrex suggests that the amount involved in this case caused the firm to do anything more in this case than it did in the other sewer and flood cases that it handled.

While I do not doubt that the firm was required to invest years to develop forms that it could use, as it admitted, "over and over[,]" and I do not doubt that the firm ought to be able to profit from its investment, the court below did not prohibit the jury from rewarding the firm for the time that it took to develop these forms. The jury

heard evidence, for instance, of the firm's experience and success in handling other sewer and flooding cases and was able to consider the extent to which such matters affected the reasonableness of its fee. But because the firm failed to show that its perception of the value of this case had any effect on the work it performed for Westrex, I agree that the trial court did not abuse its discretion when it excluded evidence of the amount involved.[3] See *Johnson v. Leibel*, 307 Ga. App. 32, 43 (6) (703 SE2d 702) (2010).

DECIDED JUNE 21, 2011.

*Womble, Carlyle, Sandridge & Rice, Adam S. Katz, Jennifer S. Collins, George W. Long III*, for appellant.

*L. Matt Wilson, Clinton W. Sitton, Richard Kopelman*, for appellee.

---

[3] There were other reasons to exclude some of the evidence that the firm sought to introduce at trial. Some are identified in the majority opinion. In addition, with respect to the amount of the final settlement between Westrex and the City, I note that the firm was discharged long before the settlement was negotiated, and the amount of the final settlement is not probative, therefore, of the amount that the firm and Westrex genuinely and reasonably believed the case to be worth at the time the firm was representing Westrex. And with respect to the amount of the demand set forth in the ante litem notice that the firm prepared and served for Westrex, if the notice were offered as proof of the amount that the firm genuinely believed to be at stake, the notice would be hearsay offered for the truth of the matter asserted therein and would not, therefore, be competent evidence. *Aon Risk Svcs., Inc. of Ga. v. Commercial &c. Inc.*, 270 Ga. App. 510, 511-512 (1) (607 SE2d 157) (2004).