**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely**
**filed.**
**https://www.gaappeals.us/rules**

**June 24, 2025**

# In the Court of Appeals of Georgia

A25A0458. PICKREN v. CAMPBELL.

DOYLE, Presiding Judge.

Roy Campbell III filed for divorce against Krista Pickren, and Campbell moved to enforce the parties' prenuptial agreement. The trial court granted Campbell's motion before entering the divorce decree, and Pickren filed an application for discretionary appeal, which this Court granted. In three related enumerations of error, Pickren contends that the trial court erred by enforcing the prenuptial agreement because Campbell had an undisclosed relationship with another romantic partner when the agreement was executed. For the reasons that follow, we affirm.

The record shows that the parties began their romantic relationship in 2015, when they were both married to other people. They were each aware that the other

was married when they started their relationship. In June 2015, Campbell's then-wife filed for divorce, which divorce was finalized in 2016. Pickren and her then-husband also eventually divorced.

In 2018, Campbell proposed to Pickren. Campbell prepared a prenuptial agreement and financial disclosure,[1] both of which Pickren reviewed. Pickren retained an attorney to represent her with respect to the prenuptial agreement. After reviewing the agreement with her attorney, Pickren deliberated for a week about the terms of the agreement, particularly its alimony waiver provision, before signing it. The alimony waiver provision pertinently states as follows:

> Notwithstanding Georgia law to the contrary, each Party agrees that it is and will remain in the best interest of both Parties and his or her respective families and after born children, if any, that the Parties each waive rights to alimony in order to avoid future litigation in any divorce and, in particular, litigation over issues of alimony, conduct, fault evidence, and the causes of separation. The Parties agree that all such matters shall remain private, confidential, irrelevant, and not admissible in evidence in any future action between the Parties for divorce or otherwise.

After executing the prenuptial agreement, the parties married in October 2019.

---

[1] In the years during which the parties lived together prior to their marriage, Campbell was transparent with Pickren about his financial circumstances.

Pickren and her two children from her previous marriage then moved into Campbell's home. Throughout her marriage to Campbell, Pickren was unemployed, and Campbell paid for all of Pickren's personal expenses. Additionally, Campbell paid for all of the expenses of Pickren's children from her prior marriage.

In February 2023, Campbell informed Pickren that he was unhappy in the marriage, had been seeing someone else, and wanted a divorce. Pickren responded by suggesting that they could work through the issue and that it was "not a big deal." Thereafter, Campbell and Pickren attempted to reconcile; however, Campbell ultimately decided to end the marriage.

In April 2023, Campbell filed a complaint for divorce. In her answer, Pickren contested the enforceability of the prenuptial agreement on the basis of Campbell's undisclosed relationship with another romantic partner. Campbell moved to enforce the prenuptial agreement. In June 2023, Pickren filed a demand for a jury trial.

In September 2023, the trial court specially set a hearing on Campbell's motion to enforce the prenuptial agreement. Despite her jury demand, Pickren did not object to the trial court hearing and deciding the motion; in fact, she subpoenaed witnesses to the hearing. On November 1, 2023, the trial court convened the hearing at which

both parties appeared, testified, called witnesses, and introduced evidence.[2]

At the hearing, Campbell testified that his relationship with the other romantic partner, Crystal Denham, started after he had married Pickren. Denham also testified to this effect; however, Pickren, Campbell's ex-wife, and Campbell's adult daughter testified that Campbell had admitted to each of them that his relationship with Denham predated his marriage to Pickren. Pickren further testified that she would not have signed the prenuptial agreement had she known about Campbell's relationship with Denham.

In December 2023, the trial court entered an order granting Campbell's motion to enforce the prenuptial agreement. The trial court found that the parties had started their romantic relationship when they were both married to other people; that prior to the marriage, Campbell was open with Pickren about his financial condition; that during the prenuptial negotiations, Campbell had fully disclosed his financial condition; that Pickren had reviewed the prenuptial agreement with counsel, on whose advice she carefully considered the agreement before signing it one week later of her own volition; that during their marriage, Campbell paid for nearly all of Pickren's and her children's expenses; that despite Campbell's and Denham's

---

[2] At the hearing, Pickren did not object to the trial court hearing evidence on, or ruling on the enforceability of, the prenuptial agreement.

denials, Campbell and Denham were in a romantic relationship prior to Campbell's marriage to Pickren; that Campbell did not disclose this relationship to Pickren during the prenuptial negotiations; and that Campbell's relationship with Denham was an issue of conduct, fault evidence, or the causes of separation that the parties had agreed would be irrelevant and inadmissible in any divorce action per the prenuptial agreement.

As to Pickren's claim that the agreement was the product of the nondisclosure of a material fact in that Campbell had failed to disclose his romantic relationship with Denham, the trial court noted that Pickren had offered no legal authority in support of the proposition that an undisclosed romantic relationship constitutes a material fact sufficient to invalidate a prenuptial agreement. The trial court further found that the alimony waiver provision of the agreement indicated that the parties did not consider issues of conduct, fault evidence, or the causes of separation to be material, and that Campbell's relationship with Denham was such an issue. Accordingly, the trial court found that Campbell's failure to disclose this relationship did not constitute the nondisclosure of a material fact sufficient to justify setting aside the prenuptial agreement.

The trial court found that the terms of the prenuptial agreement were not

unconscionable, particularly because they provided for Pickren to receive a property settlement payout of $112,500 pursuant to the divorce, and Pickren had not claimed that the agreement was unconscionable.

Finally, the trial court found that Pickren had neither claimed nor presented any evidence or testimony that the facts and circumstances had changed since the execution of the prenuptial agreement so as to make its enforcement unfair or unreasonable.

In March 2024, Pickren filed a waiver of jury demand, and after Pickren waived her jury demand, the trial court held a final hearing on the divorce. Pickren then timely filed an application for discretionary appeal, which we granted, and this appeal followed.

1. Pickren first contends that the trial court erred by finding that Campbell's romantic relationship with Denham at the time the prenuptial agreement was executed did not constitute a material fact sufficient to warrant setting aside the agreement. Based on the record before us, we discern no abuse of discretion.

> In *Scherer v. Scherer*,[3] the Supreme Court of Georgia established a three-part test to be employed in determining whether a prenuptial agreement is enforceable. Under that test, the trial court must determine

---

[3] 249 Ga. 635 (292 SE2d 662) (1982).

(1) whether the agreement was obtained through fraud, duress or mistake, or through misrepresentation or nondisclosure of material facts; (2) whether the agreement is unconscionable; and (3) whether the facts and circumstances have changed since the agreement was executed, so as to make its enforcement unfair and unreasonable. Whether an agreement is enforceable in light of these criteria is a decision made in the trial court's sound discretion. On appeal, therefore, we review the trial court's legal holdings de novo, and we uphold the trial court's factual findings as long as there is some evidence in the record to support them.[4]

Pickren's challenge to the enforceability of the prenuptial agreement below was that Campbell's undisclosed romantic relationship with Denham constituted an undisclosed material fact. Based on the record in this case, however, it was within the trial court's discretion to find that Campbell's romantic relationship with Denham was not a material fact, the nondisclosure of which was sufficient to invalidate the prenuptial agreement.[5] This finding is supported by the parties' express agreement in

---

[4] (Citations and punctuation omitted.) *Barron v. Pritchett*, 372 Ga. App. 285, 288 (903 SE2d 924) (2024).

[5] See *Barron*, 372 Ga. App. at 290 ("[A]s a general rule, it is for the trial court to determine which facts are material to the prenuptial agreement at issue."); *Jones, Martin, Parris & Tessener Law Offices, PLLC v. Westrex Corp.*, 310 Ga. App. 192, 196 (3) (712 SE2d 603) (2011) ("Questions of relevancy of evidence, which includes the issue of materiality, are for the court, and in the absence of an abuse of discretion, this court will not interfere.") (punctuation omitted).

the alimony waiver provision of the prenuptial agreement that matters of conduct, fault evidence, and the causes of separation would be irrelevant and inadmissible in any divorce action. The stated goal of this provision was to avoid litigation of these issues. And Pickren voluntarily entered into this agreement after consulting counsel and taking a week to deliberate about this provision in particular.

Pickren cites, and we have found, no authority, either binding or persuasive, indicating that the trial court abused its discretion by declining to set aside the prenuptial agreement on the basis of Campbell's undisclosed romantic relationship. Further, under *Lawrence v. Lawrence*,[6] which the trial court correctly applied in its analysis of the facts here, satisfaction of the first prong of the *Scherer*[7] test required Campbell to show that he had fully and fairly disclosed his assets to Pickren before executing the prenuptial agreement.[8] The undisputed record here reflects that Campbell did so.[9] Accordingly, we cannot say that the trial court abused its discretion

---

[6] 286 Ga. 309 (687 SE2d 421) (2009).

[7] 249 Ga. at 641 (3).

[8] 286 Ga. at 313 (4).

[9] Compare *Mallen v. Mallen*, 280 Ga. 43, 46-47 (1) (c) (622 SE2d 812) (2005) (holding that even though a husband failed to disclose precise income data to his wife prior to executing a prenuptial agreement, this failure did not constitute the nondisclosure of a material fact sufficient to set aside the agreement under the first prong of *Scherer*, because the wife had a duty and opportunity to inquire into and

in declining to find that Campbell's preexisting infidelity was a material fact, the non-disclosure of which required it to set aside the prenuptial agreement.

2. Pickren next contends that the trial court erred by construing the language in the prenuptial agreement indicating that the parties waived consideration of conduct, fault evidence, and the causes of separation to apply to both marital and premarital conduct. We disagree.

Prenuptial agreements are contracts.[10] "The construction of a contract is a question of law for the court."[11] And "[t]he first rule that courts must apply when construing contracts is to look to the plain meaning of the words of the contract."[12]

Pickren's argument that the prenuptial agreement deems only marital conduct irrelevant and inadmissible runs counter to the plain language of the agreement. The qualifier "marital" appears nowhere in the conduct waiver provision. At the hearing on the motion to enforce the prenuptial agreement, Pickren acknowledged that her

_____

verify the nature and extent of the husband's finances).

[10] See *Smith v. Smith*, 369 Ga. App. 213, 226 (1) (d) (892 SE2d 832) (2023) ("[A]s our Supreme Court recognized in *Scherer*, public policy is not violated by permitting . . . persons prior to marriage to anticipate the possibility of divorce and to establish their rights by contract in such an event[.]") (punctuation omitted).

[11] OCGA § 13-2-1.

[12] (Punctuation omitted.) *Argo v. G-Tec Svcs., LLC*, 338 Ga. App. 608, 609 (1) (791 SE2d 193) (2016).

argument directly conflicted with the clear language of the agreement. Further, when Pickren was asked at her deposition whether she considered it any better or worse for infidelity to occur in a premarital versus a marital context, she testified that "[i]t's all the same."

Even assuming that the prenuptial agreement had qualified the conduct waiver provision to apply only to marital conduct to the exclusion of premarital conduct, there was other evidence in the record, particularly the fact that parties' relationship was itself borne of infidelity, to support the trial court's finding that the parties did not consider premarital infidelity material. Accordingly, this contention presents no basis for reversal.

3. Finally, Pickren contends that the trial court erred by usurping the jury's role in finding that the prenuptial agreement was not the product of fraud and that Campbell's undisclosed romantic relationship with Denham was immaterial to the enforceability of the agreement. We disagree.

As an initial matter, under *Scherer*, it is doubtful that Pickren was entitled to a jury trial on the issue of the enforceability of the prenuptial agreement.[13] But even

---

[13] 249 Ga. at 641 (3) (holding that "*the trial judge*" should determine whether to enforce a prenuptial agreement) (emphasis added). See also *Curry v. Curry*, 260 Ga. 302, 303 (2) (b) (392 SE2d 879) (1990) (rejecting an appellant's contention that a trial court erred by making factual findings as to an agreement that the appellant argued

assuming that Pickren had such a right, she waived it by failing to object to, and actively participating in, the trial court's hearing on the motion to enforce.

> [T]he right to trial by jury may be implicitly waived by a party's conduct. One may waive the right to trial by jury by conduct indicative of the fact that the right is not asserted. A party to litigation cannot voluntarily participate in a trial before a judge without a jury, proceed without reservation to have the trial court hear the case without the intervention of a jury, not object to the trial court's rendering judgment on the merits, and, then, after an unfavorable judgment is rendered, set aside the judgment because no jury trial was had.[14]

Here, despite Pickren's demand for a jury trial, she made no objection to the trial court hearing and ruling on the motion to enforce either before or during the hearing, voluntarily participated in the hearing, and took issue with the trial court's role in the

---

were jury issues and noting that "*Scherer* specifies that *the trial judge* shall determine whether or not to enforce the agreement") (emphasis supplied).

[14] (Citations and punctuation omitted.) *Surgijet, Inc. v. Hicks*, 236 Ga. App. 80, 81 (2) (511 SE2d 194) (1999).

hearing only after the trial court ruled unfavorably to her. Accordingly, Pickren waived this argument.[15]

*Judgment affirmed. Markle and Padgett, JJ., concur.*

---

[15] See id.; *Goss v. Bayer*, 184 Ga. App. 730, 732 (2) (362 SE2d 768) (1987) (holding that, even though the appellants were entitled to a jury trial, they had waived this right "by their conduct in participating in the bench trial and their silence in failing to protest or object") (punctuation omitted).